## NOTE.

About a fortnight after the above reported case was adjudged, there was adjudged another from a different State, and which, as respected the position of parties, was a sort of converse to it; and in its nature somewhat supplementary. It is accordingly reported in immediate sequence. From its correlative character, as just described, the reader will readily understand that he must be possessed of the preceding case in order to understand this one. It was the case of

## RAILROAD COMPANY *v.* SMITH.

1. The act of June 10th, 1852, concerning swamp and overflowed lands, confirmed a present vested right to such lands, though the subsequent identification of them was a duty imposed upon the Secretary of the Interior.
2. These lands were excepted from the subsequent railroad grants to Iowa and Missouri.

3. In a suit to recover lands which the plaintiff claims under one of the rail-
road grants, it is competent to prove by witnesses who know the lands
sued for, that they were swamp and overflowed within the meaning of
the swamp-land grant, and therefore excluded from the railroad grant.

ERROR to the Supreme Court of the State of Missouri.

The Hannibal and St. Joseph Railroad Company brought
ejectment against Smith, in one of the county courts of Mis-
souri, to recover possession of certain lands.

The title of the railroad company was deduced from an act of
Congress, entitled, "An act granting the right of way to the
State of Missouri, and a portion of the public lands to aid in
the construction of certain railroads in said State," approved
June 10th, 1852. This act granted to the State of Missouri, for
the purpose of making the railroad, every alternate section of
land designated by even numbers on each side of the road.

The legislature of Missouri, in September, 1852, accepted the
grant, and by statute vested the land granted in the railroad
company.

Such was the title of the plaintiff.

That of the defendant, Smith, was deduced from the same
" swamp-land grant," the act of Congress, namely, which is set
out in the statement of the last reported case, approved Septem-
ber 28th, 1850, by which Fremont County in that case held *its*
lands. But in this case the railroad interest was the *actor;* not
as in the last one a defending party merely, with a swamp-land
grantee in the position of assailant.

On the trial below of the present cause the defendant intro-
duced evidence against objection tending to prove that the lands
in suit were wet and unfit for cultivation at the date of the
swamp-land act of 1850; and this was his title. No evidence
was introduced by him tending to show that the land in suit
was ever certified as swamp land by the Secretary of the Inte-
rior, or that the same was ever patented as such to the State of
Missouri. Nor was this pretended. In fact the correspondence
of the land department of the United States showed that the
secretary had no sufficient evidence to enable him to make such
certificates.

The court in which the suit was brought gave judgment for
Smith, the defendant, and the railroad company appealed to the
Supreme Court of Missouri. That court affirmed the judgment

of the court below, and the railroad company now brought the case here.

*Messrs. James Carr and W. P. Hall, for the plaintiff in error; Mr. Drake, contra.*

Mr. Justice MILLER delivered the opinion of the court.

The grants of lands by Congress to the States in aid of railroads have generally been made with reference to the lands through which the roads were to pass, and, as the line of the road had to be located after the grant was made, it has been usual in the acts making the grant, to describe them as alternate sections of odd numbers within a certain limit on each side of the road, when it should be located.

This, of course, left it to be determined by the location of the road what precise lands were granted. So far as this uncertainty in the grant was concerned, it was one which might remain for a considerable time, but which was capable of being made certain, and *was* made certain, by the location of the road. But as Congress could not know on what lands these grants might ultimately fall, and as the roads passed through regions where some of the lands had been sold, some had been granted for other purposes, and some had been reserved for special uses, though the title remained in the United States, these statutes all contained large exceptions from the grant, as measured by the limits on each side of the road and as determined by the odd numbers of the sections granted.

We have had before us two cases growing out of the construction to be given to the language of these exceptions in the grant of May 15th, 1856, to the State of Iowa. The first of these was the case of *Wolcott* v. *The Des Moines Company.** The other is the case of *The Railroad Company* v. *Fremont County*, decided at this term.†

The case before us arises under a similar grant to the State of Missouri, with like reservations in the act, but it raises a question somewhat different from that presented by the other two cases.

In the last of those cases it was determined that a proviso which excluded from the grant " all lands heretofore reserved by

---

* 5 Wallace, 681.                    † The case immediately preceding.

any act of Congress, or in any manner by competent authority, for the purpose of aiding in any object of internal improvement, or for any other purpose whatever," excluded the lands granted to the States by the act of September 28th, 1850, known as the swamp-land grant. In that case the county of Fremont, claiming under the swamp-land grant, was plaintiff, and the railroad company, claiming under the grant to the State for railroads, was defendant, and the main point in it related to the evidence which might be necessary to establish the fact that the lands claimed by plaintiff were swamp and overflowed within the meaning of the act of 1850.

In the present case the position of the parties is reversed, the plaintiff claiming under the act of June 10th, 1852, granting lands to the State of Missouri for railroad purposes, and the defendant claiming under the swamp-land grant.

In the former case it was necessary for the plaintiff, who must succeed on the strength of her own title, to show satisfactory evidence that the title of the United States had, under the swamp-land grant, become vested in Fremont County. The opinion of the court shows how this was successfully done in that case.

In the present action it was incumbent on the railroad company to show that the title of the United States had become vested in the company under the grant for railroad purposes.

It is admitted that this has been done, unless the land is of that class reserved from the grant as swamp land; for the act under which plaintiff claims has an exception in precisely the same terms with the act for the benefit of the Iowa railroads.

In the former case the plaintiff, claiming under the swamp-land grant, was bound to establish his title by such evidence as Congress may have determined to be necessary to make the title complete in the State, or the grantee of the State, to which the lands were supposed to be granted, otherwise the plaintiff established no legal title. In the present case it is not necessary to defeat the title under the railroad grant to show that all the steps prescribed by Congress to vest a complete title in defendant, under the swamp-land grant, have been taken. It is sufficient to show that this land which is now claimed under the railroad grant, was reserved out of that grant, and this is done whenever it is proved by appropriate testimony to have been swamp and overflowed land, as described in the act of 1850.

In order to determine the character of the testimony which

will prove this, it may be useful to look at the statute which granted these swamp lands.

The first section of the act, after declaring the inducements to its passage, says that the whole of these swamp and overflowed lands, made thereby unfit for cultivation, and unsold, are hereby granted to the States.

The third section, for further description, says that all legal subdivisions, the greater part of which is wet and unfit for cultivation, shall be included as swamp lands; but when the greater part is not of that character the whole of it shall be excluded.

Congress has here given a criterion, apparently not difficult of application, by which to determine what was granted, to wit, such legal subdivisions of the public lands, the greater part of which were so far swamp and overflowed as to be too wet for cultivation. Now, here is a present grant by Congress of certain lands to the States within which they lie, but it is by a description which requires something more than a mere reference to their townships, ranges, and sections, to identify them as coming within it. In this respect it is precisely like the railroad grants, which only became certain by the location of the road. In fact, in this regard the swamp-land grant was the more specific, for all the lands of that description were granted, and they have remained so granted ever since, while no particular land was described by the railroad grant, which was a float, to be determined by the choice of the line of the road in future. No act of Congress has ever attempted to take back this grant of the swamp lands, or to forfeit it, or to give it to any other grantee, or modified the description by which they were given to the States. It was protected by positive reservation in the grant under which plaintiff claims. Now, when a party claiming under that grant sues to recover a particular piece of land which is excepted out of the grant by appropriate language, is it not competent to show by parol proof that it was of the class covered by the first grant and excepted from the second, namely, so swampy, overflowed, and wet, as that the major part of the tract was unfit for cultivation ?

By the second section of the act of 1850 it was made the duty of the Secretary of the Interior to ascertain this fact, and furnish the State with the evidence of it. Must the State lose the land, though clearly swamp land, because that officer has neglected to do this ? The right of the State did not depend on his action,

but on the act of Congress, and though the States might be embarrassed in the assertion of this right by the delay or failure of the Secretary to ascertain and make out lists of these lands, the right of the States to them could not be defeated by that delay. As that officer had no satisfactory evidence under his control to enable him to make out these lists, as is abundantly shown by the correspondence of the land department with the State officers, he must, if he had attempted it, rely, as he did in many cases, on witnesses whose personal knowledge enabled them to report as to the character of the tracts claimed to be swamp and overflowed. Why should not the same kind of testimony, subjected to cross-examination, be competent, when the issue is made in a court of justice, to show that they are swamp and overflowed, and so excluded from the grant under which plaintiff claims, a grant which was also a gratuity?

The matter to be shown is one of observation and examination, and whether arising before the secretary, whose duty it was primarily to decide it, or before the court, whose duty it became because the secretary had failed to do it, this was clearly the best evidence to be had, and was sufficient for the purpose.

Any other rule results in this, that because the Secretary of the Interior has failed to discharge his duty in certifying these lands to the States, they, therefore, pass under a grant from which they are excepted beyond doubt; and this, when it can be proved by testimony capable of producing the fullest conviction, that they were of the class excluded from plaintiff's grant.

The decision of the case of the *Railroad Company* v. *Fremont County* disposes of all the errors alleged in this case but the admission of the verbal testimony, and as we are of opinion that the State court did not err in that, the JUDGMENT IS AFFIRMED.

Mr. Justice CLIFFORD, dissenting.

Unable to concur in the judgment of the court in this case, I think it proper to state the reasons of my dissent.

Congress made provision, by the first section of the act of the twenty-eighth of September, 1850, that swamp and overflowed lands, "*made unfit thereby for cultivation,*" and which remained unsold at the passage of the act, should be granted to the States in which the same were situated, to enable the States to con

struct the necessary levees and drains to reclaim the lands so granted, and render them fit for cultivation.*

Such lands were a part of the public domain, and of course it was necessary, before the title could vest in the States, that the land should be surveyed and designated, as lands not made unfit thereby for cultivation were no more included in the first section of the act than lands sold prior to its passage.

Taken literally, the first section, it is conceded, purports to grant the whole of those swamp and overflowed lands, made unfit thereby for cultivation; but the second section makes it the duty of the Secretary of the Interior to make out an accurate list and plats of the lands described as aforesaid; and the third section provides that, in making out said list and plats, whenever the greater part of a subdivision is wet and unfit for cultivation, the whole of it shall be included in the list and plats, which is a matter to be ascertained and determined by the Secretary of the Interior, and which, under the act of Congress, cannot be ascertained and determined by any other tribunal. Lands fit for cultivation, under those circumstances, are to be included in the list and plats; but the corresponding provision in the same section is, that if the greater part of a subdivision is not of that character, that is, not swamp and overflowed lands, made unfit thereby for cultivation, then the whole of the subdivision shall be excluded from the list and plats.

Special power is conferred upon the Secretary of the Interior to make out an accurate list and plats of the lands, and it is quite clear that a jury is no more competent to ascertain and determine whether a particular subdivision should be included, or excluded, from the list and plats required to be made under that section, than they would be to make the list and plats during the trial of a case involving the question of title.

Courts and juries are not empowered to make the required list and plats, nor can they determine what particular lands shall be included in the list and plats before they are prepared by the officer designated by law to perform that duty.

Support to that conclusion is derived from the subsequent language of the same section, which makes it the duty of the secretary, when the list and plats are prepared, to transmit the same to the governor of the State, and to cause a patent to be

---

* 9 Stat. at Large, 519.

issued to the State for the lands.   Unless the requirements were such as is supposed, it is difficult to see how the affairs of the land department can be administered, as the records and files of the office would not furnish any means of determining whether a given parcel of land belongs to the State in which it is situated or to the United States.

Evidently the title to the lands remains in the United States until these proceedings are completed, as the same section which makes it the duty of the secretary, when the list and plats are prepared, to transmit them to the governor and to cause a patent to be issued therefor, also provides that when the patent is issued "the fee simple to said lands shall vest in the said State, . . . subject to the disposal of the legislature therof."

Prior to the issuing of the patent therefor the fee simple to the lands does not vest in the State, and the lands, prior to the date of the patent, are not subject to the disposal of the legislature.

Strong confirmation that the construction of that act herein adopted is correct is also derived from the subsequent legislation of Congress upon the same subject.   Selections of swamp and overflowed lands were made by the States, in certain cases under that act, before the required list and plats were made by the secretary, and Congress, on the third of March, 1857, passed an amendatory act to remedy the difficulty, in which it is provided to the effect that such selections, if reported to the general land office, should be confirmed, provided the lands selected were vacant and unappropriated, and the selections did not interfere with actual settlements under any existing laws of the United States.*

Such a law was certainly unnecessary if the construction of the original act adopted in the opinion just read is correct, as in that view the original act vested a fee simple title in the States without the necessity of waiting for any action on the part of the land department; and if so, then it follows that the States may select for themselves, and if their title is questioned by the United States or by individuals, they may claim of right that the matter shall be determined by jury.

Anticipating that the decision will occasion embarrassment to the land department, I have deemed it proper to state thus briefly the reasons of my dissent.

---

* 11 Stat. at Large, 251.