## TABORECK *v.* B. & M. R. R. Co. IN NEBRASKA.

*(Circuit Court, D. Nebraska.*  January, 1881.)

1. LAND GRANT TO RAILROADS—CONSTRUCTION.

    Land grants to railroads take effect from the time that the line of the railroad is definitely fixed or located, notwithstanding the lands may not be selected till a later date.

2. SAME.

    The land-grant act of July 2, 1864, was a definite and explicit grant of all the land embraced within 10 alternate sections on each side of the line of the road, on the line of the road, and not sold, reserved, or otherwise disposed of by the United States, and to which a pre-emption or homestead claim had not attached at the time the line of the road was definitely fixed; and the fact that congress did not prescribe any lateral limit in the selection of lands in lieu of those previously sold or disposed of by government, cannot affect the construction of the grant.

3. HOMESTEAD AND PRE-EMPTION RIGHTS.

    The act of April 21, 1876, (19 St. 35,) passed for the protection of settlers on public lands, by pre-emption and homesteads, does not apply to a case where, prior to such pre-emption or homestead entry, the lands had been specially granted by act of congress, and had fully vested in the grantee.

Suit in Equity.

*H. H. Blodgett,* for complainant.

*T. M. Marquett* and *J. W. Deweese,* for respondent.

McCRARY, C. J.  The controlling question in this case is, did the grant to the Burlington & Missouri River Railroad Company attach to the land in controversy on the fifteenth day of June, 1865, the date at which the line of the railroad was definitely fixed under the provisions of the act of congress approved July 2, 1864, making a grant of land to said company?  13 St. p. 364, § 19.  Complainant insists that the title did not pass to the company until the land was actually selected by the company and patented to it.

Section 19 of the act above named provides as follows:

"Sec. 19. And be it further enacted, that for the purpose of aiding in the construction of said road, there be, and hereby is, granted to the said Burlington & Missouri River Railroad Company every alternate section of public land (excepting mineral lands, as provided in the act) designated by odd numbers, to the amount of 10 alternate sections per mile on each side of said road, on the line thereof, and not sold, reserved, or otherwise disposed of by the United States, and to which a pre-emption or homestead claim may not have attached at the time that the line of said road is definitely fixed: provided, that said company shall accept this grant within one year from the passage of this act, by filing such acceptance with the secretary of the interior, and shall

also establish the line of said road, and file a map thereof with the secretary of the interior within one year of the date of said acceptance, when the said secretary shall withdraw the lands embraced in this grant from market."

The agreed statement of facts shows that the line was definitely fixed June 15, 1865, at which time the land in question had not been sold, reserved, or otherwise disposed of by the government, nor had any pre-emption or homestead claim attached. The complainant's claim, whatever it was, did not attach to the land until in the year 1871, at which time the proceedings to obtain title under the homestead law were inaugurated. The general rule that grants of land of this character take effect from the time that the line of the railroad is definitely fixed or located, is well settled. *Knevals* v. *Hyde*, 1 Mc-Crary, 402; *Railroad Co.* v. *Smith*, 9 Wall. 95; *U. S.* v. *B. & M. R. R. Co.* 98 U. S. 334; *M. K. & T. Ry. Co.* v. *K. P. Ry. Co.* 97 U. S. 491; *Schulenberg* v. *Harriman*, 21 Wall. 44; *Leavenworth, etc., R. Co.* v. *U. S.* 92 U. S. 733.

The only question open for consideration in this case is whether there is anything in the provisions of the grant under which the respondent claims to take the case out of the general rule established by these authorities. Counsel for complainant insists that, since the grant has no lateral limits, and there is no limitation of distance from the road within which the selection is to be made, the rule does not apply. I fail to see the force of this objection. The grant is of "every alternate section of public land (excepting the mineral lands, as provided in this act) designated by odd numbers to the amount of 10 alternate sections per mile on each side of said road, on the line thereof, and not sold, reserved, or otherwise disposed of by the United States, and to which a pre-emption or homestead claim may not have attached at the time that the line of said road is definitely fixed." This seems to be a definite and explicit grant of all the land embraced within the 10 alternate sections on each side of the line of the road, with the exceptions named. Nothing is wanting to make it definite and absolute except the definite location or fixing of the line; and there can be no doubt, in view of the decisions already referred to, that the title to the land in controversy vested in the respondent when the route was fixed and the location became certain. By the location of the line the location of the land became certain, and the title, which was previously imperfect, acquired precision and became attached to the land. The fact that congress did not prescribe in this grant any limitation upon the distance from the road

within which the company may make selections, in lieu of lands previously sold or disposed of by the government, can make no difference in the construction of the language above quoted.

A question of greater difficulty arises under the act of April 21, 1876, (19 St. 35.) That statute confirms "all pre-emption and homestead entries, or entries in compliance with any law of the United States, of the public lands, made in good faith, by actual settlers, upon tracts of land of not more than 160 acres each, within the limits of any land grant, prior to the time when notice of the withdrawal of the lands embraced in such grant was received at the local land-office in the district in which such lands are situate," etc. It is insisted that this statute is broad enough to embrace within its terms the case at bar; but it appears to me that the act, by its terms, presupposes a case in which notice of withdrawal of the lands was required by law to be given. It does not, in my opinion, apply to a case where, prior to any such pre-emption or homestead entry, the lands had been specially granted by an act of congress, and had fully vested in the grantee. To give it such a construction would be equivalent to saying that congress intended to take lands from an owner whose title was perfect, and confer them upon another. It is conceded that the line had been definitely fixed within the meaning of the act before any steps were taken by the complainant to acquire title under the homestead or pre-emption laws, and it follows from this fact, as already shown, that the title vested in the grantee, the lands being within the 20-mile limits. The act of congress was itself a grant, as well as a law, and had all the force of a patent. When the condition (the definite location of the line) was performed, the title became absolute. It cannot be supposed that congress intended, by the act of 1876, to divest titles which had previously been perfected. That act, like previous laws of a similar kind, was intended to give force and effect to the principle that "when an individual in the prosecution of a right does everything which the law requires him to do, and he fails to attain his right by the misconduct or neglect of a public officer, the law will protect him." *Lytle* v. *State of Arkansas,* 9 How. 333. But this principle applies only "where, by law or contract, the acquisition of a right is made dependent upon the performance of certain specified acts." *The Yosemite Valley Case,* 15 Wall. 91. The present case does not fall within the rule. There is nothing in the granting act requiring officers of the land department to give notice of the withdrawal of the land from market. It does not appear that such officers failed to perform any act that the law required of them

respecting said grant, much less that respondent neglected to do anything required of it.

My conclusion is that the title of respondent, under the act of congress, was perfect prior to the occupation of the land by complainant, and that therefore the complainant is not entitled to decree as prayed for.

The case will be referred, in accordance with the agreement of parties, to D. G. Hull, master in chancery of the court, to take the testimony and find the facts as to the character and value of complainant's improvements.

DUNDY, D. J., concurs.