## CHANDLER *v.* CALUMET & H. MIN. CO.

*(Circuit Court, W. D. Michigan, N. D.* November 14, 1888.)

1. PUBLIC LANDS—SWAMP LANDS—PAROL EVIDENCE.
   Under the provisions of the act of congress of September 28, 1850, confer-ring swamp lands, and the Michigan act of June 28, 1851, evidence *in pais* that a parcel of land was at the date of the first-named act of the quality therein described, is incompetent, after the secretary of the interior has discharged his duty, and approved lists of swamp lands, made under his directions from the field-notes of survey, which lists do not contain the land in question, al-though embracing other lands in the township in which it lies, and where no judicial or other proceedings have been had to modify his action, or to extend or renew his powers, over lands not so approved. In such case the state can-not claim that lands not so approved passed to it under the language of the act of congress.

2. SAME—ESTOPPEL BY STATE.
   The state of Michigan, having accepted from the United States a grant of lands to build a canal, provided for the selection of the same by its own agents, subject to approval by the secretary of the interior, made a contract with a corporation for its construction, and patented the land in question, (with other lands,) duly selected and approved, in accordance with its legisla-tion and that of congress on the subject, to such contractor, in 1855, who re-ceived the same *bona fide,* is estopped from setting up that the land inured to it under the swamp grant, and not under the canal grant. 10 St. at Large, 35; Sess. Laws Mich. 1853, No. 38, p. 48.

*(Syllabus by the Court.)*

At Law.

The action was ejectment for the S. E. ¼ of the N. W. ¼ of section 23, township 56 N., range 33 W., in Houghton county, Mich. This land lies close to the outcrop of the Calumet lode, the lode underlying the whole of it. Plaintiff claimed the land under a patent issued by Michi-gan to him, November 3, 1887, describing the land as "swamp" land. By the act of congress of September 28, 1850, the United States gave to Michigan (and other states) the whole of the swamp and overflowed lands made unfit thereby for cultivation, within the state, and made it the duty of the secretary of the interior to make accurate lists and plats of all such lands, and transmit the same to the governor of the state, and at his request to cause patents thereof to issue to the state, conveying to it the fee-simple of such lands. It appeared on the trial, by the records of the land-offices of Michigan and the United States, that the secretary had, in 1854, "listed" and approved to Michigan a large number of de-scriptions lying in the above township and range as swamp lands; the land in dispute not being included therein, nor in any list of swamp lands made at any time by the secretary. It appeared also that in 1850, after the passage of the above act of congress, the secretary of the interior had written to the United States surveyor general a letter of instructions as to the mode of selecting or segregating the swamp lands from the other public lands, in which he had directed that in cases where the field-notes of the United States survey of lands should be accepted by the state as the basis of segregation, and the intersections of the lines of swamp or overflow with those of the survey alone were given, those intersections

might be connected by straight lines; and all legal subdivisions, the greater part of which should be shown by those lines to be within the swamp or overflow, should be certified to the state as swamp lands. Michigan, by act of its legislature of June 28, 1851, accepted the grant, and adopted the notes of the United States surveys as the basis upon which they would receive the swamp lands. The surveyor general for Michigan, under the legislation and letter of instructions, caused plats to be made in accordance with the field-notes, and made lists of the swamp lands, including those in the township mentioned, and transmitted the same to the United States land-office. This list did not contain the land in question, and the list was approved by the secretary, as above mentioned. The plats so made by the surveyor general from the field-notes were, after the swamp selections had been listed by him from them, lodged in the Michigan land-office at Lansing. The plat of this township showed a number of lines in pencil upon it, supposed to have been drawn in accordance with these instructions, and a number of parcels marked "S" in pencil, and among those so appearing to be marked was the land in question. The plaintiff claimed that the land in question, being marked "S," and being more than half within pencil lines so drawn, was swamp land, although never listed as such by the surveyor general, and never listed or approved as such by the secretary, and offered the plat with said pencil notations as proof thereof. He claimed further that the evidence of witnesses was competent to prove that the land in question was, in 1850, in fact swamp land, thereby made unfit for cultivation, and offered such evidence. By act of congress of August 26, 1852, there was granted to Michigan, for the purpose of building the Sault Ste. Marie canal, 750,000 acres of public lands, to be selected by agents to be appointed by the governor of Michigan, subject to the approval of the secretary of the interior, from any lands in Michigan subject to private entry. Michigan accepted this grant by act of February 5, 1853, empowering the governor to appoint agents to select the land, to contract for the building of the canal, and to confer upon the builders the grant, or such part thereof as should be agreed upon as the price for doing the work. It appeared that the contract was made, the entire grant being the price agreed upon, and the canal was built in accordance therewith, and the lands (including the land in question) were patented by the state to the contractor after having been duly selected by the state agents, and duly approved by the secretary. One of these patents, including the land in question, was executed by the state in 1855. The Michigan act provided that patents should be issued by the state of the lands selected by the state agents. The defendant introduced deeds and records showing itself the owner of the land in question by intermediate conveyances from the first patentee of the state.

*Ball & Hanscom, Frank E. Robson,* and *Isaac Marston,* for plaintiff.

*T. L. Chadbourne* and *Ashley Pond,* for defendant.

SEVERENS, J., (*after stating the facts as above.*) In giving effect to the grant of 1850, it has been held by the supreme court of the United States

that, in order that the grant should accomplish its purpose, rather than fail, where the secretary of the interior had taken no action in executing a duty devolved upon him of designating the lands which should be included in the grant, and where, after the lapse of a reasonable time for the segregating of the lands in that way, nothing had been done in that direction, parol proof might be received for the purpose of showing that the lands were of the character described in the general language of the act. There is some analogy in this to the case of an appointed arbitrator or umpire, who refuses or fails to act. Other means are then allowable to determine the matter, because justice should not be withheld, even though the instrumentalities to it, more especially in contemplation, fail. That was the consideration which led to the decision of the court in *Railroad Co.* v. *Smith*, 9 Wall. 95. This, however, does not at all impugn the general proposition that the secretary of the interior was intended by congress to act as the agent of the government in determining the lands, in respect of their character, upon which the grant should operate; nor the further proposition that, where the secretary has discharged his duty, and made the determination throughout a state, or a comprehensive locality, and no objection has been made by the state to the mode and result of the exercise of that duty, and no proceedings, judicial or otherwise, have been resorted to for the purpose of modifying the secretary's action, or extending or renewing the exercise of his powers over other lands, the state cannot assume that other lands, not claimed theretofore under the act, and never listed or approved under it, passed to it by the general language of the act, and rest its right to them upon evidence *in pais* in respect to their quality. Such a course would render nugatory the substantial purpose of appointing the secretary at all, which manifestly was to identify the lands, and thus fix the grant. It was a matter of great public convenience and importance that this extensive grant of parcels out of the government lands should be identified; and that identification is nothing, if, after it has taken place, the whole matter remains at large. These are the conclusions which I think result from the course of adjudication in the supreme court from the case of *Railroad Co.* v. *Smith*, 9 Wall. 95, to *Wright* v. *Roseberry*, 121 U. S. 488, 7 Sup. Ct. Rep. 985.

But upon another ground I am of the opinion that the plaintiff cannot prevail. That the swamp-land grant of 1850 conferred upon the states complete dominion over the granted lands, and absolute proprietorship therein, so far as third persons are concerned, has been repeatedly held. The question has been somewhat widely discussed as to whether there was anything in the nature of a trust between the general government and the state, in respect of these lands, but the result of the discussion upon it is that it is settled in the negative. The authorities which may be cited in support of this general proposition are the cases known as the "Iowa Railroad Cases,"—*Emigrant Co.* v. *County of Adams*, 100 U. S. 61; *Mills Co.* v. *Railroad Cos.*, 107 U. S. 557, 2 Sup. Ct. Rep. 654; and the cases in Louisiana, *Hayar* v. *Reclamation Dist.*, 111 U. S. 701, 4 Sup. Ct. Rep. 663, and *U. S.* v. *Louisiana*, 127 U. S. 182, 8 Sup. Ct. Rep.

1047. It was an absolute gift to the states, without any limitation in the nature of a property trust, or anything to prevent the application by the state of the swamp-land fund to general purposes. The obligation of the state should be commensurate with the proprietary rights accorded to it, and its dealings with such rights, tested by the principles applicable to a proprietor. The most that can be claimed on the facts, interpreted most favorably to the plaintiff, is that the state—the state of Michigan, in this case—had a right to have this land listed and approved by the secretary of the interior as swamp land, and thus designated as part of the grant. But it was a right which was not asserted by the state. If it had been, it might have been disputed by the secretary; and, if he had denied it, it would never have ripened into title. At least, this would be so unless some further proceedings should be taken to vindicate and enforce that right. Instead of insisting upon this right, if it had it, the state selected and received this description under another grant, and conveyed it for a valuable consideration to a third person, who took it *bona fide.* The state could not, after this had been done, be heard to say that it would repudiate its own course, and, dishonoring its patent, claim title under the act of 1850, and resell it to another. Certainly this could not be done without a judicial proceeding instituted for that purpose. How that might have resulted, it is not for me to say, but it is the inclination of my opinion that the result here indicated must be the result even in such a proceeding as that, or anywhere where these facts came in controversy. The result of these views is that the offers of oral evidence will be declined. The oral evidence offered to show that these lands were swamp lands mentioned in the grant, is, upon what appear to be undisputed facts, rejected; and the court will therefore instruct the jury that, upon the facts as they are made to appear in this case, the defendant is entitled to the verdict.

The jury were instructed accordingly.