Weldon, J.,
delivered the opinion of the court:
On the 20th of April, 1895, the claimant filed a second amended petition (by leave of the court), which embraces a full statement of his claim, in which it is substantially alleged that prior thereto he had been engaged under the name and style of Robert Dunlap and Company, in the city of Brooklyn in the State of New York, in the manufacture.of a product of the arts known and described as “ stiff hats.”
That between the 28th of August, 1894, and the 16th of March, 1895, the claimant found it necessary to use. and actually and necessarily did use, in the manufacture of dissolved “ shellac,” the ingredient used to stiffen hats, 2,604 proof gallons of alcohol upon which a tax had been paid to the United State at the rate of 90 cents per proof gallon, and also used *150 4,455-1^- proof gallons on which a tax of $1.10 per gallon had been paid. The petition further alleges that on or about the 10th of October, 1894, the claimant gave notice to the collector of internal revenue for the district in which claimant’s business was carried on, that he was using alcohol in the manufacture of said products, and requested him to tal;e such official action relative to the inspection as the law and regulations might require; that thereafter on the 12th of January and the 22d of March, 1895, he, the claimant, tendered to the collector testimony and affidavits showing the amount of alcohol consumed in the manufacture of dissolved u shellac,” an ingredient used in making said hats, and showing that a tax had been paid to the United States on the alcohol, exhibiting the stamps and offering to deliver to the collector the same, to the end that the claimant might receive from the Treasurer of the United States a rebate of the tax so paid by him.
It is further alleged that the collector, acting under the decision of the Secretary of the Treasury, then and there declined to receive such stamps or such affidavits, and declined to take any steps whatever under the sixty-first section of the act of Congress of August 28,1894.
It is also shown by the allegations- of the petition that the Secretary of the Treasury on the 7th day of October, 1894, decided that until further action by Congress it was not possible to establish and enforce a regulation under the act aforesaid, and instructed the Commissioner of Internal Bevenue to take no further action in the matter at present.
It is also alleged that the failure of the Secretary to prescribe regulations as required by said act and the failure of the collector of internal revenue to receive affidavits and testimony constitute no bar to the claimant’s light of recovery against the defendants.
The findings in substance show that the claimant was, as it is alleged, at the time and place a manufacturer of “ stiff hats,” and that in such manufacture he used 2,004.17 gallons of domestic alcohol, on which a tax had been paid of 90 cents, amounting to the sum of $2,344.40, and 4,456.78 gallons of domestic alcohol, on which a tax had been paid at the rate of $1.10 per gallon, amounting to the sum of $4,900.81, making-in the aggregate the sum of $7,244.20; and that on several occasions he tendered to the collector of the district evidence tending to show the use and consumption of said amount of *151 alcohol; exhibited and offered to deliver to the collector evidence showing that the tax had been paid on the alcohol, but the collector, acting under the instructions of the Secretary of the Treasury, declined to receive the stamps, affidavits, or other evidence. The failure and refusal of the collector to receive and recognize the evidence offered by the claimant was owing to the failure of the Secretary of the Treasury in not preparing and prescribing regulations under the sixty-first section of the act of August 28,1894.
On the 3d of October, 1894, the Commissioner of Internal Revenue addressed a letter to the Secretary of the Treasury as follows, to wit:
“ Sir: I have the honor to report that the preparation of regulations governing the use of alcohol in the arts and manufactures, with rebate of the internal-revenue tax as provided by section 61 of the revenue act of August 28,1894, has been and is now receiving very serious consideration from this office, and many communications have been received from, and personal interviews had with, manufacturers who use alcohol in their establishments; and it is found in every case, without exception, all agree that no regulation can be enforced without official supervision, and that, without such supervision, the interests of manufacturers and of the Government alike will suffer through the perpetration of frauds.
“As it is found to be impossible to prepare these regulations in a way that will prove satisfactory without official supervision, I have the honor to inquire whether there is any appropriation or any general provision of law authorizing the expenditure of money by this Department needed to procure such supervision.”
To which letter the Secretary replied as follows:
“Sir: Tours of the 3d instant, inquiring whether there is any appropriation or general provision of law authorizing the expenditure of money by the Treasury Department or by the Commissioner of Internal Revenue to provide supervision of manufacturers using alcohol iu the arts, etc., under section 61 of the act of August 28, 1894, is received, and in response I have the honor to state that no appropriation whatever, either special or general, has been made by Congress for the purpose mentioned, or for any other purpose connected with the execution of the section of the statute referred to.”
On the 5th of October, 1894, the Commissioner replied to the Secretary as follows:
“ Sir: I have the honor to acknowledge the receipt of your letter of the 5th instant, in reply to my letter of the 3d instant, in which you state that no appropriation whatever, either special *152 or general, bas been made by Congress authorizing the expenditure of money by the Treasury Depai’tment or by the Commissioner of Internal ltevenue to provide supervision of manufacturers using alcohol in the arts, etc., under section 61 of the act of August 28,1894, or for any purpose connected with the execution of the section of the statute referred to.
“ In reply I would suggest that, inasmuch as I have been unable, as stated in my letter of the 3d instant, after thorough consideration of the matter, and upon consultation by letter and by personal interview with a large number of the most prominent manufacturers, to prepare any set of regulations which would yield adequate protection to the Government and the honest manufacturer without official supervision, which has not been provided for by Congress, that the preparation of these regulations be delayed until Congress has opportunity to supply this ommission.”
To which the Secretary replied as follows:
“ Sir: Your communication of yesterday in reference to the execution of section 01 of the act of August 28,1894, and advising me that, for the reasons therein stated, you are unable ‘to prepare any set of regulations which would yield adequate protection to the Government and the honest manufacturer without official supervision, which has not been provided for by Congress,’ is received. I have also given much attention to the subject, and have fully considered all the arguments and suggestions submitted by parties interested in the execution of the section of the statutes referred to, and have arrived at the conclusion that, until further action is taken by Congress, it is not possible to establish and enforce such regulations as are absolutely necessary for an effective and beneficial execution of the law.
“ You are therefore instructed to take no further action in the matter tor the present.”
In consequence of that letter the following circular was issued by the Commissioner of Internal ltevenue:
“Treasury Department,
“Oeeice oe Internal Eevenue,
“ Washington, D. G., November 34,1894.
“ In view of the fact that this Department has been unable to formulate effective regulations for carrying out the provision's of section Cl of the act of August 28,1894, relating to the rebate of tax on alcohol used in the ‘ arts, or in any medicinal or other like compounds,’ collectors of internal revenue will, on receiving notice from manufacturers of the intended use of alcohol for the purposes named, advise such manufacturers that, in the absence of regulations on the subject, no official inspection of the alcohol so used, or the articles manufactured therefrom, can be made; and that no application for such rebate can be allowed or entertained.”
*153 On December 9,1894, tbe Secretary of tbe Treasury in -bis annual report to Congress stated in substance, that owing to tbe defects in .tbe legislation, tbe Department was unable to execute tbe provisions of tbe sixty-first section of tbe act of 1894, and that after a full consideration of tbe subject and an unsuccessful attempt to frame regulations which without official supervision would protect tbe G-overnment and tbe manufacturers, tbe Department was constrained to await tbe further action of Congress. In that connection tbe Secretary estimated that tbe drawbacks provided for in tbe act would amount to $10,000,000 per annum, and tliat tbe cost of tbe necessary official supervision would not be less than $500,000 per annum.
At tbe request of tbe counsel for tbe defendants, tbe court has embraced in its findings tbe official action of tbe Secretary and Commissioner and further official proceedings which do not strictly form a part of tbe necessary findings of tbe court, and which it is not important to note in this connection.
Tbe sixty-first section of tbe statute upon which the alleged right of recovery is based reads as follows: “Any manufacturer finding it necessary to use alcohol in tbe arts, or in any medicinal or other like compound, may use tbe. same under regulations to be prescribed by tbe Secretary of tbe Treasury, and on satisfying tbe collector of internal revenue for tbe district wherein he resides or carries on business that be has complied with such regulations and has used such alcohol therein, and exhibiting and delivering up tbe stamps which show that a tax has been paid thereon, shall be entitled to receive from tbe Treasury of tbe United States a rebate or tbe repayment of tbe tax so paid.” (Supp. R. S., vol. 2,266, p. 330.) The act is entitled “An act to reduce taxation, to provide revenue for the Government, and for other purposes,” and took effect on and from its passage (United States v. Burr, 159 U. S., p. 78).
Tbe contention of tbe plaintiff is that by the terms of tbe statute a grant was made in preesenti to all persons who after tbe passage of tbe law find it necessary to use alcohol in tbe arts, or in any medicinal or like compound, and who actually use tbe same; that tbe right to a rebate or repayment of tbe tax paid upon such alcohol does not depend upon regulations to be made by tbe Secretary of the Treasury; that tbe right of repayment is complete and perfect by the grant and tbe fact of use, and not conditional upon regulations to be prescribed by tbe Secretary and tbe compliance by tbe manufacturer with such regulations.
*154 Upon the part of tbe defendants it is contended that without regulations the right of the manufacturer is incomplete; that Oong’ress left to the Secretary the right to determine the question of fact whether any regulations which he had the power to prescribe and enforce would adequately protect the revenue and the manufacturers, and he having determined that question in the negative, no right to a rebate arose.
Yery able and elaborate briefs have been hied upon the part of both parties in defense of their respective theories, and' the court has in the investigation and determination of the cause been materially assisted by the labors of counsel.
' The provisions of the statute upon which the contention has arisen embrace a subject-matter which for a period of more than thirty years has been a fruitful source of Congressional legislation and judicial controversy, commencing in 1862, and extending to the time of the enactment of the law of August 28, 1894. Many statutes have been passed by Congress, both civil and criminal, having reference to a tax on distilled spirits, the collection of such tax by an elaborate system of regulations, and the enforcement of its payment by the enactment of severe penal laws against persons attempting to evade the enforcement of the law. The Internal Revenue Department having charge of that branch of the public service has, as is known from common knowledge, encountered serious and vexatious difficulties in devising regulations and adequate means to protect the interests of the Government against fraudulent evasion of the law; and the courts of the United States in their civil and criminal jurisdiction have been frequently engaged' in the trial of causes which originated from violations of the revenue laws applicable to distilled spirits.
In the construction of the statute it is proper for the court to take into consideration the circumstances under which it was enacted, and in the light of those circumstances consider the purpose and will of the legislature in construing the words used in the law. As has been said by the Supreme Court it is not proper for the court to recur to the views of individual members nor to consider the motives which influenced them in voting upon a given measure. “But courts, in construing a statute, may with propriety recur to the history of the times when it was passed; and this is frequently necessary, in order to ascertain the reasons as well as the meaning of particular provisions.” (Union Pacific Railroad v. United States 91 U. S. R., p. 72.)
*155 In the passage of the law of 1894, and the enactment of the sixty-first section, Congress had two purposes in view, the first was to raise a revenue from distilled spirits by the imposition of a heavy tax, and the second was to favor the manufacturer by a rebate and repayment of the tax on all alcohol used by him in the course of his trade and business. The tax was to be imposed and paid absolutely, unless the article was brought within the exemption of being used in the arts subject to the law, when by a repayment or rebate it was to be relieved of the burden of taxation for the benefit of the manufacturer. The revenue to be derived from the tax was the main purpose and policy of Congress, and the exemption for the benefit of the manufacturer was the secondary or subordinate purpose to be accomplished in the operation of the law.
Revenue is absolutely necessary 'to the existence of the Government, without which it could not exist; and perhaps the most troublesome duty in connection with the public service is in the department of taxes in the efficient enforcement of the law in the collection of the revenue. This has been found especially true in relation to the tax on distilled spirits ever since the adoption, in 1862, of the policy of taxing them at very high rates of assessment. Enactment, surveillance, and evasion have been the contending forces, as is abundantly established by the history of the public service extending through many years, in dealing with the subject of what is popularly known as the whiskey tax. As is said by the Supreme Court, the object of the law in all its stringent provisions is to prevent fraud on the revenue and to secure the tax levied. (Felton v. United States, 96 U. S. R., 703.)
The act of 1894 imposed an additional tax on the manufacture of alcohol for the purpose of increasing the revenue of the Government from that source, leaving substantially in force the provisions of law and the regulations of the Department, thereby insuring the collection of the tax and the compliance of the manufacturer with certain conditions which, from experience, it was shown were necessary to insure the prompt and faithful collection of the assessment upon that particular product. In derogation of the general purpose to impose an additional tax on alcohol and thereby increase the revenue, Congress, by the incorporation of section 61 into the act of 1894, provided that alcohol, under certain circumstances, should be relieved by rebatemant from the burden imposed on it by other provisions of the statute. The same policy, *156 which, through many years of the internal-revenue system of taxation, liad been adopted for the protection of -the Government against the illicit manufacture of distilled spirits was continued, and no substantial change was made in the system of rules and regulations by which the rights of the defendants and honest manufacturers w.ere protected against the fraud and competition of illicit distillation.
The policy of the exemption, provided by section 61, had been considered many times in Congress — in 1882 (13 Cong. Kec., pp. 5325, 6360-4), in 1886 (17 Cong. Rec., 341, 394, 582), and in the Senate of the Fiftieth Congress (Sen. Doc. No. 2332), and in the same Congress which enacted the law of 1894 a proposition to exempt alcohol used in the arts was rejected, so that while the provisions of section 61 became a part of the law by amendment, after the bill had been under consideration for many months, it was not new in principle as a measure of discussion and consideration. The large number of claims which have originated under the provisions of section 61 show that it is a measure of far-reaching'effect, and by its operation diminishes to a very material extent the revenue which would otherwise be raised from the tax on distilled spirits under the act of 1894; and while Congress were desirous of assisting the manufacturer in the production of his product, by affording cheap material, the policy of the law in raising revenue for the expenses of the Government and the protection afforded by precautions against fraud, by necessary and wise regulations, were not disregarded. We make these general observations, tending as they do to show the light in which must be construed the terms of section 61, on which the right of the claimant depends.
Many cases have been cited to sustain the different theories of construction contended for by the parties, the plaintiff insisting that the question has been definitely settled by decisions of the Supreme Court and the defendants contending that the construction insisted on by them is sustained by a proper application of the decisions of the'court to the peculiar facts of this ease. If the alleged cause of action of the claimant is dependent upon the action of the Secretary of the Treasury, and without such action the right is not consummate, then it is immaterial whether in law the refusal of the Secretary to prescribe regulations was justifiable. If he failed for any reason to perforin a duty essential to the claimant’s cause of *157 action, bis failure is fatal to tbe right of recovery on tbe part of tbe claimant and no remedy can be afforded to bim in this proceeding.
This being a suit to recover tbe rebate, it is not necessary to examine and discuss tbe question as to .wbat might have been tbe rights of manufacturers to compel the Secretary to prescribe regulations under which they might have been protected in tbe enjoyment of tbe benefits intended to be secured to them by the provisions of section 61.
In tbe case of Campbell v. United States (107 U. S. R., 407), a controversy similar to tbe one involved in this case was determined by tbe Supreme Court on appeal from this court. By the fourth section of tbe act of August 5,1861, chapter 45, it was provided, “That from and after tbe passage of this act there shall be allowed, on all articles wholly manufactured of materials imported, on which duties have been paid, when exported, a drawback equal .in amount to*tbe duty paid on such materials, and no more, to be ascertained under such regulations as shall be pfescrib'ed by the Secretary of tbe Treasury.” Under that act in January, 1862, the Secretary established such regulations as he deemed appropriate.
The regulations, after having required certain acts on the part of the exporter, provided that “ all this having been done, and the oath of the exporter and his bond with condition prescribed by the rules being given, the collector is to give a certificate of the amount to which the party is entitled as a drawback, on which he is to receive the money.”
The plaintiffs sued in the Court of Claims for a drawback on account of a large amount of linseed cake made by them out of linseed imported from a foreign country and which they exported to London.. The court dismissed the petition on the ground, as stated in the opinion, that it was not a cause of which the court had jurisdiction. The court, however, upon an issue being made, found the facts upon which the conclusion of law dismissing the case for want of jurisdiction was based. After a statement of the facts as found by the Court of Claims, the Supreme Court says
■ “ The argument of counsel for the United States is, that until the officers of the customs comply with all the regulations of the Secretary of the Treasury, and the collector issues the drawback certificate, the law imposes on the United States no obligation to pay anything for such drawback; that the law conferred on the Secretary the right to make the regulations, and the collector the jiower to make the certificate for payment *158 of drawback, and that tbe refusal of tbe collector to perform tbe duties imposed upon bim preliminary to making bis certificate, and then refusing tbe certificate, totally defeats tbe claim of tbe party wbo, by tbe law, is guaranteed a right to 1ns drawback, and wbo bas complied with all that tbe law requires of bim to secure and enforce it. To tbe same effect is the opinion of tbe Court of Claims.
“It would be a curious thing to bold that Congress, after clearly defining tbe right of the importer to receive a drawback upon subsequent exportation of tbe imported article on which be bad paid, duty, bad empowered tbe Secretary by regulations, which might be proper to secure tbe Government against fraud, to defeat totally tbe right which Congress had granted. If the regulations of themselves worked such a result, no court would hesitate to bold them invalid as being altogether unreasonable.
“But the regulations in this case are not unreasonable, nor do they interpose any obstacle to tbe full assertion and adjustment of plaintiff’s rights. It is tbe order of the' Secretary of tbe Treasury forbidding tbe collector to proceed under these regulations or in any other mode which is tbe real obstacle. Is that order a defense to this action ? Can tbe Secretary, by this order, do what he could not do by regulations; repeal or annul tbe law? Can be thus defeat the law be was appointed to execute, by making regulations, and then by ordering bis officers not to act under them, and not to act at all, place himself above tbe law and defy it?
“We think the Court of Claims has jurisdiction of sucha claim: (1) Because it is founded on a law of Congress, and (2) because the facts found iu this case raise an implied contract that the United States will refund to the importer tbe amount be paid to tbe Government. * * *
“Tbe act of Congress having declared that on exportations there shall be allowed a drawback equal in amount to the duty paid on such material, and tbe Secretary having established by a regulation that, as regarded tbe cake resulting from the manufacture of tbe linseed into oil and cake, the latter represents at 17 cents per hundred pounds the duty on the imported seed so converted into cake, there resulted a contract that when exported the Government would refund, repay, pay back, this amount as a drawback to the importer. If this be not so, it is because it is impossible to make a contract when the details of its execution or performance are left to officers who refuse to carry them out.
“So it is equally clear that this claim is founded on the law allowing drawback.
“The Court of Claims makes the mistake of supposing that the claim is founded on the regulations of the Secretary of the Treasury.” •
*159 The counsel for plaintiff lias cited in his opening brief the case of Railroad Company v. Smith (9 Wall., 95), which is cited in the opinion of the court in the Campbell Case. That case originated under the provisions of the act of September 20, 1850, chapter 84, entitled “An act to enable the State of Arkansas and other States to reclaim the swamp lands” within their limits, the first and second sections of which provide:
First section says'that, “The whole of those- swamp and overflowed lands, made unfit thereby for cultivation, which shall remain unsold at the passage of this act, shall be, and the same are hereby, granted to States.”
Second. “That it shall be the duty of the Secretary of the Interior, as soon as may be practicable after the passage of this act, to make out an accurate list and plats of the .lands described as aforesaid, and transmit the same to the governor of the State of Arkansas and, at the request of said governor, cause a patent to be issued to the State therefor; and on that patent the fee simple to said lauds shall rest in the said State.”
The duty devolved on the Secretary was wholly neglected, and in the case of Smith it was insisted that the failure of the Secretary to act as required by the law made the lands subject to a grant for railroad purposes of a date subsequent to the swamp-land act, but the court said:
“ Must the State lose the lands, though clearly swamp land, because the officer has neglected to do this? The right of the State did not depend on his action, but on act of Congress, and though the States might be embarrassed in the assertion of this right by the delay or failure of the Secretary to ascertain and make out lists of these lands, the right of the States to them could not be defeated by that delay. * * *
“ Any other rule results in this, that because the Secretary of the Interior has failed to discharge his duty in certifying these lands to the States, they therefore pass under a grant from which they are excepted beyond doubt, and this when it can be proved by testimony capable of producing the fullest conviction that they were of the class excluded from plaintiff’s grant.
“This court has decided more than once that the swampland act was a grant in prmsenti, by which the title to those lands passed at once to the State in which they lay.” (93 U. S. R., 170.)
*160 In the case of French v. Fyan (93 U. S. R., 169, 173), the cotirt, reaffirming the case Railroad, Company v. Smith, said:
“There was no means, as this court has decided, to compel him (the Secretary) to act, and if the party claiming imder the State in that case could not be permitted to prove that the land which the.State had conveyed to him as swamp land was in fact such, a total failure of justice would occur, and the entire grant to the State might be defeated by this neglect or refusal of the Secretary to perform his duty.?’.
In speaking of the power of the officers of customs m the Campbell Case [supra) the court said:
“Their function is entirely ministerial. They are authorized to pass upon no question essential to the claimant’s right so as to conclude him in a court of competent jurisdiction. From the moment he presents his sworn entry they simply ascertain quantities, identify and mark packages, accept bonds and sureties, and see that the export article leaves the port in the ship. These and like duties being discharged, it is the collect- or’s duty — a mere ministerial function — to give the certificate of drawback. * * * He exercises no judicial or quasi judicial function. He concludes nobody’s rights and has no power to do so. The rights which the law gives can not be defeated by his refusal to act, nor by his decision that no drawback was due.”
In the case of Morrill v. Jones (106 U. S. R., 466), cited in the brief of the claimant’s counsel decided at the same term with the Campbell Case, it is in substauce held that the right of a rebate is consummate by the provisions of the law, and that a regulation of the Department introducing new.conditions and qualifications not consistent with the purpose of the statute was null and void.
The law under which the rebate was claimed is as follows: Section 2505 of the Revised Statutes, “Animals, alive, specially imported for breeding purposes from beyond the seas, shall be admitted free, upon proof thereof satisfactory to the Secretary of the Treasury, and under such regulations as he may prescribe.” By a regulation of the Department it was provided that before the collector admits animals imported he must be satisfied that the animals are of a superior stock, adapted to improving the breed of the United States. The court held that the regulation was in excess of the power of the Secretary, as the statute clearly included animals of all classes imported for breeding purposes. The Secretary prescribed the regulations but they included an unauthorized restriction. The importer complied with all the'legal regulations.
*161 In tbe case of Aucher v. Howe (50 Fed. R., 367, 368) tbe same view is taken recognizing tbe enforcement of tbe statute in the' preservation of tbe grant against restrictions and regulations tending to diminish or destroy tbe right provided by tbe law.
In tbe case of tbe United States v. Mann (2 Brock, 1) Chief Justice Marshall said in substance that rules of tbe Department which go to tbe denial of justice should be disregarded by courts, and it has been repeatedly decided that Congress can not confer the power of making laws upon executive officers. It is fundamental in constitutional law that tbe lawmaking power is exclusively in Congress and can not be delegated to any other department. Laws are sometimes dependent in their enforcement upon a condition to be ascertained and determined by some person having executive power, but that exception to tbe almost uniform operation of all laws is not a grant of legislative power in derogation of tbe function of tbe legislature.
In tbe case of Field v. Clark (143 U. S. R., 649) involving tbe constitutionality of tbe. tariff act of 1890 growing out of tbe reciprocity policy of that statute it is said “That Congress can not delegate legislative power to tbe President is a principle universally recognized as vital to tbe integrity and maintenance of tbe system of Government. * * * What tbe President was required to do was simply in execution of tbe act of Congress. It was not the making of law.”
It is insisted by claimant that tbe facts of this claim bring it within- tbe law announced by tbe Supreme Court in tbe Campbell Case, and in tbe cases cited by tbe court in elaboration and support of tbe theory of that case, and that in this case, as in those cases, tbe right of rebate or drawback does not depend on what tbe Secretary might do or fail to do. In tlie case of tbe Railroad v. Smith (9 Walk, 95), affirmed in tbe Campbell Case, there was an absolute failure to act on tbe part of the Secretary of tbe Interior; in tbe other cases regulations had been prescribed, but tbe collector, under tbe advice of the Secretary, refused to allow the rebate on tbe ground that the claimants bad 'not brought themselves within tbe requirements of tbe rules of tbe Department.
Tbe contention of tbe counsel for tbe defendants is, that the statute in this jiroceeding is different in its requirements from tbe statute in those cases, and that tbe facts of this proceeding do not bring tbe claim within tbe reasons and law of those *162 cases. The industry of counsel has brought to the attention of the court many considerations, tending, as he claims, to establish the construction of the statute for which he contends, in showing a necessity for the action of the Secretary of the Treasury in the promulgation of rules and regulations to enforce the efficient collection of the tax provided by the act of 1894, in the prevention of frauds upon the part of persons engaged in manufacture in the pretended use of alcohol. Before the consideration of the rights of the parties upon the words and phraseology of the law it may not be inexpedient to a correct conclusion upon the issue to further consider the facts so apparent from common knowledge, that the Government from its experience in the collection of what is known as the whisky tax did not intend to abandon the safeguards which experience had shown to be necessary (although perhaps inadequate) in the enforcement of the revenue laws against persons engaged in the manufacture of high wines.
This law, as have all laws since the adoption of the policy of deriving a large tax from alcohol, provides many safeguards for the assessment and collection of the tax; and consistent with that policy Congress have provided that after the payment of such tax, enforced by a system of rules and regulations, strict and technical, the tax may be rebated in favor of persons engaged in manufacture, and who in such manufacture use alcohol which has been subjected to the exactions of the law in the payment of the tax.
As has been said, two purposes must be recognized as incident to the policy of the statute: First, the collection of taxes on all alcohol manufactured, and second, that no alcohol escape payment of the tax by being fraudulently, exempted under the rebate provided in section 61. The allowance of a fraudulent rebate would be as disastrous to the collection of revenue as the failure to secure the collection of the tax from the manufacturer. These considerations become essential in the construction of tire law providing exemption from payment of the tax in favor of the class of persons enumerated in section 61. The exact language of the sixty-first section is as follows: “Any manufacturer finding it necessary to use alcohol in the arts, or in any medicinal or other like compound, may use the same under regulations to be prescribed by the Secretary of the Treasury, and on satisfying the collector of internal revenue for the district wherein he resides or carries on business *163 that he has complied with such regulations aud has used such alcohol therein, and exhibiting and delivering up the stamps, which shows that a tax has been paid thereon, shall receive from the Treasury of the United States a rebate or repayment of the tax so paid.” (2 Supp. R. S., p. 330.)
The effect of the statute is to exempt from taxation alcohol used in the “arts or any medicinal or other like compounds” and to that extent it operates as a.discrimination against persons who use and consume alcohol for any other purposes than those enumerated in the law. Equality is the fundamental theory of taxation, and statutes providing exemptions being in derogation of that theory are construed strictly. The Supreme Court in the case of the Winona and St. Peter Land Company v. Wisconsin (159 U. S. R., 529) says: “It is a familiar law that statutes exempting property from taxation are to be strictly construed,” and in support of that theory the court cites Burch v. Tennesssee (104 U. S. R., 493); Railroad Company v. Dennis (116 U. S. R., 665); Railroad Company v. Thomas (132 U. S. R., 174); Schurz v. Cook (148 U. S. R., 397).
The liability of the Government and the correlative right of the claimant to a recovery are determined by the construction of the words “ any manufacturer finding it necessary to use alcohol in the arts or in any medicinal or other like compound may use the same under regulations to be prescribed by the Secretary of the Treasury.” These are the words which by construction determine the issue of this proceeding. If as in the Campbell and other cases cited by counsel for claimant, there is a grant in prcesenti, by the terms of the statute not depending upon the action of the Secretary, the ease comes within those' cases, and the claimant’s right is consummate and .complete without the action of the Secretary in the prescription of regulations.
In the Campbell Case the controversy arose on the law of August 5,1861, chapter 45, which provides as follows": “ That from and after the passage of this act there shall be allowed on all articles wholly manufactured of materials imported, on which duties have been paid when exported, a drawback equal in amount to the duty paid on such material and no more, to be ascertained under such regulations as shpll be prescribed by the Secretary of the Treasury.”
By this statute there is a grant in prcesenti, to all persons who wholly manufacture articles of materials imported on *164 which duties have been paid, of a drawback, when such manufactured article is exported, equal in amount to the duty paid on such imported material, which drawback is to be “ ascertained under such regulations as shall be prescribed by the Secretary of the Treasury.” The manufacture and exportation is not to be conducted and carried on under such rules and regulations as may be prescribed by the Secretary ; but the extent of the drawback, measuring the rights of the manufacturer, is to be ascertained under such regulations as may be prescribed by the Secretary. The regulations of the Secretary do not become a part of the grant, but simply a means by which the drawback is to be determined as a matter of fact.
Mr. Justice Miller, in the case of Railroad Company v. Smith, supra (9 Wall., 95), says: “The first section of the act, after declaring the inducements to its passage, says that the whole of these swamp and overflowed lands, made thereby unfit for cultivation, and unsold, are hereby granted to the States.” The substance of that decision is that the act conferred a vested right to such lands, though the subsequent identification of them was a duty imposed upon the Secretary of the Interior.
In Morrill v. Jones (106 U. S. R., 466) the controversy arose on section 2505, Eevised Statutes, in relation to the importation of cattle for breeding purposes. The Secretary sought to introduce an unauthorized restriction, and the Supreme Court held that it was beyond the power of the Secretary to enlarge the requirements of the statutes. The law provided that the cattle should be admitted free of duty upon proof satisfactory to the Secretary. The law made an exemption of cattle imported for breeding purposes, not dependent upon regulations prescribed by the Secretary, but provided by the very terms and assurance of the law. It was a grant of absolute exemption against all duty to persons importing into the United States cattle having as the object of such importation a certain purpose. The Secretary added a qualification not required by the statute, and the Supreme Court decided that the law was the full measure of the claimant’s responsibility and right, and that the regulations of the Secretary formed no part of the exemption and grant. In those cases the statutes giving the right are different in their phraseology from the statute involved in this controversy; and upon that difference the Supreme Court decided that a grant was made complete and *165 consummate, not dependent upon the subsequent action of an executive officer. The regulations required and contemplated under those statutes were subordinate and provided a subsidiary means to ascertain the fact, but formed no part of the grant of right.
We have carefully considered the supplemental briefs filed by counsel, and the cases cited to support the theory of the claimant, but we do not find that the doctrine of those cases affects the construction of the statute in his favor.
In the case of Bartram v. The United States (77 Fed. Rep., 604) and other cases cited from the Federal Eeporter, the line, of judicial decision made by the Campbell Case is followed, in regarding the grant as perfect, and not dependent upon the action of the Secretary. In the Bartram Case the statute (act of August 28,1894) provided for the admission of certain articles free of duty, “but the proof of the identity of such articles shall be made under the general regulations to be prescribed by the Secretary of the Treasury.” The court said as to regulations: “None have been made under this paragraph at the time of these importations, and therefore none applicable were then in force. The failure to make them would not cut off nor suspend the right, but would leave none,-to be complied with.”
As has been said (supra) in reference to the drawback in the Campbell Case, the regulations do not become a part of the grant, but simply a means by which the amount of the drawback is to be determined’ as a matter of fact.
It is insisted in the supplemental brief of counsel for claimant that the proceeding is to recover a debt due from the United States for taxes paid; and that it is only a question of fact as to how much alcohol was used on which a tax had been paid. That theory of claimant’s right would be correct if it were not for the conditional character of the grant.
The grant in the statute under consideration is the right to use alcohol “under regulations to be prescribed by the Secretary of the Treasury,” and when so used it is.to be exempted from taxation by a rebate or repayment of the amount of tax paid by the distiller. There can be no vested right in the manufacturer in the exemption of alcohol used by him unless it is used in pursuance to regulations prescribed by the Secretary of the Treasury, for the reason that the grant to him provides that he “ may use the same under regulations to be prescribed.” The prescription of the regulations by the Secre *166 tary forms a most essential part of the grant, and without the condition upon which the manufacturer is to have the exemption the grant fails. It may have been the duty of the Secretary to prescribe regulations (of that we express no opinion), but his failure to do so will not supply a necessary and essential element in the cause of the claimant. If the regulations “to be prescribed by the Secretary of the Treasury” form a part of the affirmative right of the claimant to the rebate, and the grant embodies as one of its essential elements such regulations, the want of such regulations can not be supplied by the failure of the Secretary to prescribe regulations.
In view of the construction we have given to the language of section 61, it is unnecessary to discuss and examine the reasons assigned by the Secretary of the Treasury as a justification of his failure to prescribe regulations sufficient to protect the Government; but the failure may be considered as tending to .indicate the construction which Congress in the consideration of his report placed on the act of 1894.
' At the first session after the enactment of the law and the failure of the Secretary to prescribe regulations, he communicated to Congress the fact that no regulations had been prescribed for the reasons set forth in that report. Congress in view of such failure made no provision to meet the condition indicated in the report; but after a delay of nearly two years, to wit, on June 3,1896, repealed so much of the law of 1894 as was embraced in section 61, and by the second section of the act authorized the appointment of a joint committee to “ consider all questions relating to the use of alcohol in the manufactures and arts free of tax and to report their conclusion to Congress.” (29 Stats., 195.) This may with great propriety be reg'arded as a legislative construction of section 61, as indicating on the part of Congress the belief that it was important and necessary that regulations should be prescribed; and that the use of alcohol with a right of rebate of taxes should be guarded with the same degree of vigilance that is exercised over the manufacture of the same.
In the construction of a statute it is the duty of the judiciary to determine the legislative intent and purpose and conform its construction as near as possible to that intent and purpose. The action of Congress upon the report of the Secretary has to some extent the effect of a declaratory act and therefore competent to be considered in determining the proper *167 construction of section 61, not in retrospective operation to change the law from its expressed meaning, but to enable the court to properly solve doubts which arise from the ambiguous terms-and provisions of the statutes. While it is the duty of the judiciary to determine for itself the construction of all laws involved in the case, it may with propriety consult the action of other departments. The right of the manufacturer to a rebate being dependent on the regulations of the Secretary, such regulations are conditions precedent to his right of repayment, and therefore no right of repayment can vest until in pursuance of regulations the manufacturer uses alcohol as contemplated by the statute. The statute having prescribed certain conditions upon which the right of the claimant is predicated, and from which it originates, there can be no cause of action unless it affirmatively appears that such conditions have been complied with on the part of the claimant. This is a proceeding based upon an alleged condition of liability upon the part of the defendants, and it must be shown that all the essential elements of that condition exist before any liability can accrue. Conceding that it was the duty of the Secretary to prescribe regulations consistent with the purpose and requirements of the law, his failure to do so will not supply a necessary element in the cause of the claimant.
The judgment of the court is that the petition be dismissed.