## McCORMICK v. HAYES.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 87.    Argued March 27, 28, 1895. — Decided October 21, 1895.

In an action in which the plaintiff claims title under the act of September 28, 1850, c. 84, 9 Stat. 519, granting to the several States the swamp and over-flowed lands in each unfit for cultivation, and the defendant claims title under the act of May 15, 1856, c. 28, 11 Stat. 9, making a grant of lands to the State of Iowa to aid in the construction of railroads, parol evidence is inadmissible to show, in opposition to the concurrent action of Federal and state officers having authority in the premises, that the lands in con-troversy were, in fact, at the date of the act of 1850, swamp and over-flowed ground.

THIS writ of error brought up a judgment of the Supreme Court of Iowa, which affirmed a judgment of the District Court of Linn County in that State, declaring the defendant in error, who was the plaintiff in the suit, to be the owner of the south-west quarter of the northwest quarter of section nineteen, township eighty-five, range eight, west of the fifth principal meridian.

It was assigned as error that the judgment of the state court deprived the defendant of rights secured to him under the laws of the United States.

The plaintiff Hayes claimed title under the Swamp Land act of Congress of September 28, 1850, 9 Stat. 519, c. 84; the defendant, under an act of Congress, approved May 15, 1856, (and the acts amendatory thereof,) granting lands to the State of Iowa in aid of the construction of certain railroads. 11 Stat. 9, c. 28.

The question of title cannot be fully understood without examining various enactments, Federal and state, under which the parties respectively claim the lands in dispute, as well as some of the decisions of this court. This court felt, it said, the more disposed to enter upon this examination because of the statement by counsel in argument that many cases in the

Supreme Court of the State depend, in whole or in part, on the determination of the questions involved in this suit.

By the Swamp Land act of 1850 Congress granted to Arkansas, to enable it to construct the necessary levees and drains for reclaiming the swamp and overflowed lands within that State, the whole of such lands made "unfit thereby for cultivation." § 1. The act made it the duty of the Secretary of the Interior to make out, as soon as practicable after its passage, an accurate list and plats of those lands, and transmit it to the governor of the State, and, at the request of the latter, to cause a patent to be issued to the State therefor. "On that patent," the act declared, "the fee simple to said lands shall vest in the said State of Arkansas, subject to the disposal of the legislature thereof." § 2. The required list and plats, it was provided, should include all legal subdivisions, the greater part of which were wet and unfit for cultivation, and exclude each subdivision the greater part of which was not of that character. § 3. The provisions of the act were extended to and their benefits conferred upon each State in which swamp and overflowed lands were situated. § 4.

The legislature of Iowa authorized the commissioner of the State Land Office to provide the proofs necessary to secure those lands to the State. Laws of Iowa, 1850, 1851, 169, c. 69.

By a subsequent statute of the State, approved January 13, 1853, all the swamp and overflowed lands granted to Iowa were granted to the counties respectively in which they were situated, for the purpose of constructing the necessary levees and drains for reclaiming the same. If it appeared that any of such lands had been sold by the United States after the passage of the act of 1850, the counties in which they lay were authorized to convey to the purchasers — the county court taking from the purchaser an assignment of all his rights in the premises, with authority to receive from the United States the purchase money. Where a county surveyor had made no examination and report of swamp lands within his county, in compliance with instructions from the governor, the county court was directed to appoint a competent person with authority to examine such lands, and make reports and plats to the

county court, which should transmit lists of the lands in each of the counties, " in order to procure the proper recognition of the same, on the part of the United States, which lists, after an acknowledgment of the same by the general government," were to be recorded. Laws of Iowa, 1852, 29, c. 12, §§ 1, 2, 3.

A subsequent act, approved January 25, 1855, authorized the governor to draw all moneys due or that might become due to the State, arising from any disposition of its swamp lands by the government of the United States, to provide for the selection of the swamp lands of the State, and to secure the title to the same, and also for the selection, in the name of the State, of other lands in lieu of such as had been or might thereafter be entered with warrants; the selections made by organized counties to be reported by the governor to the authorities at Washington. Laws of Iowa, 1854, 1855, 261, c. 138.

Such was the legislation — so far as it need be noticed — at the time Congress, by an act approved May 15, 1856, granted to Iowa, to aid in the construction of certain lines of railroad in that State, every alternate section of land, designated by odd numbers, for six sections in width on each side of said roads, with liberty to the State to select, subject to the approval of the Secretary of the Interior, from the lands of the United States nearest to the tiers of sections above specified, so much land, in alternate sections, or parts of sections, as should be equal to such lands as the United States had sold or otherwise appropriated, or to which the rights of preëmption had attached at the time the lines or routes of the respective roads were definitely fixed; the land so located to be in no case farther than fifteen miles from the lines of the roads. But the act expressly exempted from its operation, and reserved to the United States, any and all lands theretofore reserved by any act of Congress, or in any manner by competent authority, for the purpose of aiding in any object of internal improvement, or for any other purpose whatsoever, except so far as it was found necessary to locate the routes of the railroads through such reserved lands, in which case the right of

way only was granted, subject to the approval of the President of the United States.   11 Stat. 9, c. 28.

The next enactment in point of time was the act of Congress, approved March 2, 1857, 11 Stat. 251, c. 117, providing that the selection of swamp and overflowed lands, granted to the several States by the Swamp Land act, and by the act of March 2, 1849, giving aid to the State of Louisiana in draining the swamp lands within its limits, and theretofore reported to the Commissioner of the General Land Office, so far as such lands remained vacant and unappropriated and were not interfered with by an actual settlement under any existing law of the United States, "be and the same are hereby confirmed, and shall be approved and patented to the said several States, in conformity with the provisions of the act aforesaid, as soon as may be practicable after the passage of this law."

The trust conferred upon Iowa by the act of Congress of May 15, 1856, was accepted by the State by an act approved March 26, 1860.   And by the latter act so much of the lands, interests, rights, powers, and privileges as were granted by Congress in aid of the construction of a railroad from Lyons City northwesterly to a point of intersection with the main line of the Iowa Central Air Line Railroad, near Maquoketa, thence on said main line running as near as practicable to the 42d parallel across the State to the Missouri River, were granted and conferred upon the Cedar Rapids and Missouri River Railroad Company, an Iowa corporation.   Laws of Iowa, 1860, 40, c. 37.

By an act of Congress, approved March 12, 1860, it was provided that the selection to be made from lands then already surveyed in each of the States, under the authority of the Swamp Land Act of 1850, and of the act, approved March, 1849, to aid Louisiana in draining the swamp lands therein, "shall be made within two years from the adjournment of the legislature of each State at its next session after the date of this act; and, as to all lands hereafter to be surveyed, within two years from such adjournment, at the next session, after notice by the Secretary of the Interior to the governor of the

State that the surveys have been selected and confirmed." 12 Stat. 3, c. 5.

At the trial in the District Court the plaintiff introduced witnesses having more or less knowledge of the land in dispute. Their evidence, it is claimed, showed that at and ever since the passage of the act of 1850 this land was, within the meaning of that act, swamp and overflowed land.

The parties stipulated that the land in controversy was seventeen miles in a direct line from the Cedar Rapids and Missouri River Railroad, (now the Chicago and Northwestern Railroad,) as constructed, built, and operated; that the railway was built, constructed, and was being operated on the present line of the latter road, for a distance of about 100 miles west of Cedar Rapids, Iowa, on and prior to the 2d day of June, 1864; and that the assessed value of the land in controversy for each and every year since 1866 to the present time, as returned by the assessor, as shown by his assessment books, was $95.

The *north*west quarter of the northwest quarter of section 19, township 85, range 8, was selected as swamp and overflowed land.

The land here in dispute is the *south*west quarter of the northwest quarter of the *same section*, township, and range, and is covered by a quitclaim deed to Hayes, acknowledged September 4, 1888, from the supervisors of Linn County, State of Iowa, the consideration recited being one dollar.

The present suit was commenced within a few days after the making of that deed.

The defendant's witnesses stated facts tending to show that the land in controversy was not and never was swamp or overflowed land.

He introduced in evidence a list of lands, aggregating 1809 acres, certified as having been granted by Congress to Iowa for the Iowa Air Line Railroad, afterwards the Cedar Rapids and Missouri River Railroad. This list designated lands within the six-mile limit, *and included the land in controversy*, was signed by the Commissioner of the General Land

Office, December 23, 1858, and approved by the Secretary of the Interior, December 27, 1858.

The defendant read in evidence a list of lands in Linn County, aggregating 668 acres, certified and approved in 1881 *to the State* by the Secretary of the Interior, under the act of May 15, 1856, *as having inured to the Cedar Rapids and Missouri River Railroad Company. This list included the land in suit,* was in the form required by the Iowa statutes, and was signed by the governor and register of the state land office.

He also read in evidence a deed dated March, 1870, from the Cedar Rapids and Missouri River Railroad Company to the Iowa Railroad Land Company, and also a deed to him from the Iowa Railroad Land Company, dated October 30, 1885 — both deeds covering the land in dispute.

It appears that the parties made the following stipulation, which was read in evidence by the defendant, to wit: "In order to avoid the introduction of evidence upon the subject hereinafter mentioned, it is stipulated and agreed by and between the parties: That the county of Linn, prior to 1875, made selections of swamp lands as shown by the records of the register of the state land office, which selections so made embrace certain tracts in section 19, township 85, range 8, in Linn County, and among them the *north*west quarter of N. W. quarter and the south*east* quarter of the N. W. quarter of said above-named section. The said selections so made, or a copy thereof, are on file in the Secretary of State's office in the State of Iowa, and that the tract in controversy [the *south*west quarter of the northwest quarter of the same section] *was not included in any such selections,* and that so far as shown by any record of the State or county the tract in controversy has never been patented to the State nor by the State to the county." 

It was also proven by the defendant that the Cedar Rapids and Missouri River Railroad Company and the Iowa Railroad Land Company and himself had annually paid the state, county, and other taxes assessed and levied on said land from 1866 to 1888, both inclusive.

Each party objected to the evidence introduced by the other on the ground of incompetency.

This was the case on which the District Court gave judgment establishing and quieting the plaintiff's title.

*Mr. Charles A. Clark* for plaintiff in error.

*Mr. D. E. Voris* for defendant in error.

MR. JUSTICE HARLAN, after stating the case as above reported, delivered the opinion of the court.

Undoubtedly, the certification to the State by the Department of the Interior, of the lands in controversy, under the railroad act of May 15, 1856, as having inured to the Cedar Rapids and Missouri River Railroad Company, was unauthorized by law, if the lands at the date of the Swamp Land act of 1850 were swamp and overflowed lands, whereby they were unfit for cultivation; for, lands of that character were expressly reserved from the operation of the railroad grant of 1856. If they were not granted to the State for the benefit of the railroad company, because previously granted to the State as swamp and overflowed lands, they could not be legally certified or transferred to the State to be applied in aid of the construction of the railroad.

This is made clear by the decision in *Railroad Company* v. *Fremont County*, 9 Wall. 89, 94.

That was a suit in equity to quiet the title to a tract of land in Iowa, both parties claiming under grants by Congress — the plaintiff, the county of Fremont, under what is known as the Swamp Land act of 1850; the railroad company, under the above act of Congress of May 15, 1856, granting lands to Iowa to aid in the construction of railroads. After referring to that part of the act reserving from its operation any and all lands theretofore reserved to the United States by any act of Congress, or in any manner by competent authority for the purpose of aiding in any object of internal improvement, or for any other purpose whatever, the court, among other things, said: "These reservations clearly embrace the

previous grant of the swamp and overflowed lands for the
purpose of enabling the States to redeem them and fit them
for cultivation by levees and drains.   At the time of the
passage of this act, (May 15, 1856,) a moiety of the lands in
controversy had been selected and reported to the land depart-
ment; and the authorities of the State, under instructions
from that department, were engaged in the selection of the
remainder.   The lands already selected and returned had
been withdrawn from sale, and were not in the market at
the time of the passage of the act ; and as soon as the remain-
ing lists were returned, which was January 21, 1857, they
were also withdrawn from the market.   In the language of
the railroad act, the whole of the lands in controversy were
' otherwise appropriated,' and were ' reserved' for the purpose
of aiding the States in their objects of internal improvements."
Many decisions of this court are to the same effect.

The controlling question, therefore, in this case, so far as
the plaintiff is concerned — and he must recover upon the
strength of his own title, even if that of the defendant be
defective — is whether, under the circumstances disclosed
by the record, the particular lands in controversy, in the
absence of any selection and certification of them by the
United States to the State, under the Swamp Land act,
can be shown by parol testimony to have been, in fact, at
the date of that act, swamp and overflowed lands?   Congress
having made it the duty of the Secretary of the Interior to
make out accurate lists and plats of the lands embraced by
the Swamp Land act, and transmit the same to the governor
of the State, and, at the request of the latter, to cause a
patent to be issued to the State therefor, and having pro-
vided that " on that patent the fee simple to said lands shall
vest in said State subject to the disposal of the legislature
thereof," did the title vest in the State, by virtue alone, and
immediately upon the passage of the act, without any se-
lection by or under the direction of the Department of the
Interior, so that the State's grantees could maintain an action
to recover the possession of them ?

At the term of the court at which *Railroad Company* v.

*Fremont County* was determined the case of *Railroad Company* v. *Smith,* 9 Wall. 95, was decided.    The latter case was ejectment by a railroad company to recover certain lands in Missouri.   It deduced title from an act of Congress, approved June 10, 1852, granting public lands to that State to aid in the construction of certain railroads.    The State accepted the grant, and by statute vested in the railroad company the lands so granted, without any description of their boundaries.   The defendant Smith, asserting title under the Swamp Land act, introduced parol evidence tending to show that, at the date of that act, the lands in dispute were, in fact, wet and unfit for cultivation, and, therefore, were to be deemed swamp and overflowed lands within the meaning of the act of Congress.   It was admitted that the title had vested in the railroad company, unless the land was of the class that was reserved by the above act of 1852, which, in that respect, was similar to the act of 1856 granting lands to Iowa to aid in the construction of railroads.   The court held this evidence to be competent.

Mr. Justice Clifford did not concur in the judgment of the court, being of the opinion that as special power was conferred upon the Secretary of the Interior to make out an accurate list and plats of the lands, it was quite clear that a jury was no more competent to ascertain and determine whether a particular subdivision should be included, or excluded, from the list and plats required to be made under that section, than they would be to make the list and plats during the trial of a case involving the question of title; and that courts and juries were not empowered to make the required list and plats, nor determine what particular lands shall be included in the list and plats before they were prepared by the officer designated by law to perform that duty; otherwise, he said, the States could select for themselves, and if their title was questioned by the United States or by individuals, they could claim of right that the matter shall be determined by jury.

The next case is that of *French* v. *Fyan,* 93 U. S. 169, 172, 173.   That was also ejectment, and the question was, whether,

as against a patent for the lands there in controversy, issued by the United States to Missouri under the Swamp Land act of 1850, it was competent to show by parol testimony that the lands so patented were not, in fact, swamp and overflowed lands within the meaning of the act. In that case, the plaintiff, by purchase in 1872, became vested with such title as had passed in 1854 to the Missouri Pacific Railroad Company under the act granting lands to aid that corporation in the construction of its road. The defendant based his claim on a patent issued by the United States in 1857 under the Swamp Land act of 1850. It thus appeared on the face of the papers — treating the grant by the Swamp Land act as one *in præsenti*, and any patent issued under it, no matter when issued, as relating to the date of the grant — that the better title was with the defendant, because the grant under which the railroad company claimed was not made until after the passage of the Swamp Land act. In this view, the question arose whether, in an action at law, in which these evidences of title came in conflict, parol testimony could be admitted that the land was never, in fact, swamp and overflowed, and, in that way, collaterally impeach the patent issued to the State under the act of 1850.

In considering that question the court, in *French* v. *Fyan,* reaffirmed the general doctrine, to which there are some recognized exceptions not important to be here stated, that when the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, was conclusive upon all others. Speaking by Mr. Justice Miller, who delivered the opinion in the previous case of *Railroad Co.* v. *Smith,* the court, in *French* v. *Fyan,* said : " We see nothing in the case before us to take it out of the operation of that rule ; and we are of opinion that, in this action at law, it would be a departure from sound principle, and contrary to well-considered judgments in this court, and in others of high authority, to permit the validity of the patent to the State to be subjected to the test of the verdict of a jury on such oral testimony as might be brought

before it. It would be substituting the jury, or the court sitting as a jury, for the tribunal which Congress had provided to determine the question, and would be making a patent of the United States a cheap and unstable reliance as a title for lands which it purported to convey."

In the argument of *French* v. *Fyan* great reliance was placed by the counsel on *Railroad Co.* v. *Smith*, above cited, in which, as we have seen, parol evidence was held to be competent to prove that a particular piece of land was swamp and overflowed land within the meaning of the act of Congress. Upon this point the court, in *French* v. *Fyan*, said: "But a careful examination will show that it was done with hesitation, and with some dissent in the court. The admission was placed expressly on the ground that the Secretary of the Interior had neglected or refused to do his duty; that he had made *no selection or lists whatever*, and *would issue no patents*, although many years had elapsed since the passage of the act. The court said: 'The matter to be shown is one of observation and examination; whether arising before the Secretary, whose duty it was primarily to decide it, or before the court whose duty it became, because the Secretary had failed to do it, this was clearly the best evidence to be had, and was sufficient for the purpose.' There was no means, as this court has decided, to compel him to act; and if the party claiming under the State in that case could not be permitted to prove that the land which the State had conveyed to him as swamp land was in fact such, a total failure of justice would occur, and the entire grant to the State might be defeated by this neglect or refusal of the Secretary to perform his duty. *Gaines* v. *Thompson*, 7 Wall. 347; *Secretary* v. *McGarrahan*, 9 Wall. 298; *Litchfield* v. *Register and Receiver*, 9 Wall. 575. There is in this no conflict with what we decide in the present case, but, on the contrary, the strongest implication, that if, in that case, the Secretary *had made any decision*, the evidence would have been excluded."

The same general question arose, under somewhat different circumstances, in *Ehrhardt* v. *Hogaboom*, 115 U. S. 67, 69,

which was an action to recover possession of a tract of land in California; the plaintiff deraigning title through a conveyance by one to whom the United States had issued a patent in 1875; the defendant contending that the lands in controversy, although covered by the above patent, were, in fact, lands that passed to the State under the Swamp Land act of 1850. The question was, whether the defendant, who did not connect himself in any way with the title, and was a mere intruder, without color of title, could be admitted to show by parol evidence that the lands were in fact swamp and overflowed. The court said: " In that case [*French* v. *Fyan*, 93 U. S. 169] parol evidence to show that the land covered by a patent to Missouri under the act was not swamp and overflowed land, was held to be inadmissible. On the same principle parol testimony to show that the land covered by a patent of the United States to a settler under the preëmption laws was such swamp and overflowed land must be held to be inadmissible to defeat the patent. It is the duty of the land department, of which the Secretary is the head, to determine whether land patented to a settler is of the class subject to settlement under the preëmption laws, and his judgment as to this fact is not open to contestation in an action at law by a mere intruder without title. As was said in the case cited of the patent to the State, it may be said in this case of the patent to the preemptioner, it would be a departure from sound principle and contrary to well-considered judgments of this court to permit, in such action, the validity of the patent to be subjected to the test of the verdict of a jury on oral testimony."

It is supposed by counsel that these principles were modified in *Wright* v. *Roseberry*, 121 U. S. 488, 511, 512, 518. But such is not the fact. In that case the plaintiff sued to recover possession of a tract of land in California. He asserted title under that act, claiming by conveyance from parties who had purchased from the State; the defendants, under patents of the United States issued under the preëmption laws to them or to parties from whom they derived their interest. The particular point to which the court directed its attention was whether an action could be maintained upon the title to swamp

and overflowed lands *in California* until they had been certified as such pursuant to the fourth section of the act of Congress of July 23, 1866, entitled "An act to quiet land titles in California." In determining that question it became necessary to examine the course of legislation and of judicial decision under the Swamp Land act of 1850. Referring to the act of July 23, 1866, 14 Stat. 218, c. 219, the court said that "Congress changed the provisions of law for the identification of swamp and overflowed lands *in that State. It no longer left their identification to the Secretary of the Interior,* but provided for such identification by the joint action of the state and Federal authorities." That act, the court said, tended to remove the uncertainty and confusion which prevailed in relation to land titles in that State, "principally by recognizing the action of the State in disposing of the lands granted to her, in cases where such disposition was made to parties in good faith, and did not interfere with previously acquired interests, and by providing a mode for identifying the swamp and overflowed lands in the future without the action of the Secretary of the Interior." It appeared in proof that the lands there in controversy had been segregated as swamp and overflowed lands by the authorities of the State of California; that their designation as such lands on a plat of the township made by the surveyor general of the United States was approved by that officer, and forwarded to the General Land Office, pursuant to the act of 1866; and that such plat was approved by the Commissioner, as shown by its official use of it. "The act of Congress," the court said, "intended that the segregation maps prepared by authority of the State, and filed in the state surveyor general's office, if found upon examination by the United States surveyor general to be made in accordance with the public surveys of the general government, should be taken as evidence that the lands designated thereon as swamp and overflowed were such in fact, except where this would interfere with previously acquired interests." So far from modifying the rule announced in *French* v. *Fyan*, the court recognized the authority of that case, and distinguished it from the one then under consideration.

In *Heath* v. *Wallace*, 138 U. S. 573, 585, the court held that the decision of the land department on the question whether lands were swamp and overflowed, within the meaning of the act of 1850, was the decision of a fact, which, in the absence of fraud or imposition, was conclusive upon the courts.

The latest case in this court upon the general question before us is *Chandler* v. *Calumet & Hecla Mining Co.*, 149 U. S. 79, 88, 89, 92. The action was ejectment, each party holding a conveyance from the State of Michigan; that to the plaintiff, Chandler, having been made many years subsequent to the one made to the defendant. The plaintiff claimed that the premises in controversy were a part of the swamp and overflowed lands granted to the State by the act of September 28, 1850, and were patented to him by the State on the 3d day of November, 1887, whereby he acquired a title to the same, superior to that attempted to be passed to the defendant by the prior patent based on an act of Congress of August 26, 1852, granting public lands to Michigan to aid in the construction of a ship canal around the Falls of St. Mary. There was proof showing that the State and the Interior Department made a selection of lands under the Swamp Land act, and that the lands there in controversy were not embraced in such selection, nor in the patent to the State for them. The defendant contended that this action of the State and of the Interior Department was a determination that the particular land in dispute was not covered by the act of 1850, and its having been selected and certified to the State under the act of 1852 was a determination that it was included in the canal grant; and that this determination could not be collaterally attacked in an action at law. Referring to *Railroad Company* v. *Smith*, Mr. Justice Jackson, speaking for the court, after observing that the converse of the situation existing in that case was presented in the case then before it, said: "But aside from this, the rule as to oral evidence, recognized in that case, was afterwards explained, and limited in its operation to cases in which there had been non-action or refusal to act on the part of the Secretary of the Interior in selecting lands granted, as appears in the subsequent cases of *French* v. *Fyan*, 93

U. S. 169, 173, and *Ehrhardt* v. *Hogaboom*, 115 U. S. 67, 69, where parol evidence was offered to show that patented lands were not of the character described."

After examining *French* v. *Fyan* and *Ehrhardt* v. *Hogaboom*, above cited, and stating that nothing said or involved in *Wright* v. *Roseberry* was in conflict with the rulings in those cases, the court proceeded : "Under the principle announced in that case, and under the foregoing facts in the present case, it would seem that there had been such affirmative action on the part of the Secretary of the Interior in identifying the lands in this particular township, containing the lands in controversy, as would amount to an identification of the lands therein, which pass to the State by the swamp land grant, and that the selection by the State of the demanded premises under the canal grant of 1852, with the approval of the Secretary of the Interior, and the certification of the department to the State that they were covered by the latter grant, may well be considered such an adjudication of the question as should exclude the introduction of parol evidence to contradict it. The exclusion of the land in dispute from the swamp lands selected and patented to the State, and its inclusion in the selection of the State as land coming within the grant of 1852, with the approval of such selection by the Interior Department and the certification thereof to the State, operated to pass the title thereto as completely as could have been done by formal patent, *Frasher* v. *O'Connor*, 115 U. S. 102; and being followed by the State's conveyance to the canal company, presented such official action and such documentary evidence of title as should not be open to question by parol testimony in an action at law. Under the facts of this case we are of opinion that the plaintiff in error could not properly establish by oral evidence that the land in dispute was in fact swamp land, for the purpose of contradicting and invalidating the department's certification thereof to the State and the latter's patent to the canal company."

To this review of the former decisions of this court but little need be added. The case before us is not like that of *Railroad Company* v. *Smith*, in which, as subsequently

explained in *French* v. *Fyan*, it was shown that there was an absolute neglect of duty on the part of the Interior Department, in that it neither made, nor would make any selection or lists whatever, and, therefore, there was no action by that department that could be relied on as a determination of the question whether the particular lands then in dispute were or were not embraced by the Swamp Land act. That case was exceptional in its circumstances, and seemed to justify the decision rendered, in order to prevent a total failure of justice, arising from the unexplained neglect of the land department to perform the duty imposed by the act of 1850. What was said in *French* v. *Fyan* shows that this court not only so regarded the previous case, but it was, in effect, said that the ruling in *Railroad Company* v. *Smith* was not to be extended to any case in which the land department had taken action or made a decision or determination under the Swamp Land act.

In the case now before us, the selection by Linn County, grantee of the State, prior to 1875, of swamp and overflowed lands in the very section of which the lands in dispute formed a part, without including the latter in such selection, together with the acquiescence in that selection by the Interior Department, and the selection by or under the direction of the Secretary of the Interior, and their certification to the State, first in 1858, and again in 1881, of the lands in dispute, as lands inuring, under the act of Congress of May 15, 1856, to the Cedar Rapids and Missouri River Railroad Company, and, therefore, not lands embraced by the act of 1850, constituted a determination, based on "observation and examination," that the lands here in dispute were not swamp and overflowed, and, therefore, had not been reserved or appropriated, prior to the date of the railroad land grant act, but passed, as the Secretary of the Interior certified, to the State, for the purposes named in the railroad act. Twice the land department certified these lands to the State as inuring to it under the railroad land grant act, and it does not appear that the State has ever questioned the correctness of that certification or applied to the Secretary of the Interior for a reëxamination

as to the character of the lands. Nor did the county of Linn, so far as the record shows, ever contend that these lands belonged to it, under the act of 1850, as the grantee of the State, until its board of supervisors for the consideration of $50, (their deed, however, reciting one dollar as the consideration,) sold them to the plaintiff, taking his promissory note for the price. This was in 1888, a few days before this suit was brought, and more than thirty years after the Secretary of the Interior first certified them to the State as railroad grant lands.

We are of opinion that this case comes within the ruling of previous cases, particularly *Chandler* v. *Calumet & Hecla Mining Co.*, and *French* v. *Fyan.*

Upon the authority of former adjudications, as well as upon principle, it must be held that parol evidence is inadmissible to show, in opposition to the concurrent action of Federal and state officers, having authority in the premises, that these lands were, in fact, at the date of the act of 1850, swamp and overflowed grounds, which should have been embraced by Linn County in its selection of land of that character, and withheld from the State as lands granted expressly in aid of railroad construction within its limits.

The plaintiff was not entitled to the relief asked, and, as the case was tried by the court, judgment should have been rendered for the defendant.

As the court below did not proceed upon the grounds we have stated to be proper, and as its judgment deprived the defendant of rights secured by the laws and exercised under the authority of the United States, that judgment must be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Reversed.*