## ROBARDS TOBACCO CO. v. FRANKS, Collector.

### (Circuit Court, D. Kentucky. June 5, 1900.)

1. INTERNAL REVENUE—TAX ON MANUFACTURED TOBACCO—CONSTRUCTION OF · WAR REVENUE ACT.

A manufacturer of tobacco after April 14, 1898, placed stamps on a quantity of manufactured tobacco at the existing rate of tax of 6 cents per pound; and such tobacco remained in its factory at the time of the passage of the war revenue act of June 13, 1898, by section 3 of which the tax was increased to 12 cents per pound, with ·a proviso that upon articles manufactured and removed from the factory before the passage of the act, bearing tax stamps affixed and canceled subsequent to April 14th and which articles were at the time of the passage of the act held and intended for sale, a tax equal to one-half the difference between the tax paid and that levied by the act should be levied and collected. *Held,* that the affixing and canceling of stamps thereon amounted constructively to a removal of such tobacco for sale, within the meaning of the new · act, and that it was subject only to an additional tax of 3 cents per pound, the same as could have been assessed upon it had it been physically removed from the factory.

2. SAME—ASSESSMENT OF ADDITIONAL TAX.

The collector having assessed and collected an additional tax of 6 cents per pound on such tobacco while it still remained in the factory, whereas it was not subject to the payment of any tax until its removal for consumption or sale, his action amounted to a finding of the jurisdictional fact that it had been removed and was being held for sale, which, as against the government, fixed its status for taxation under the act, and rendered the collection of any additional tax above 3 cents per pound illegal, and such excess recoverable by the taxpayer.

Action against a collector of internal revenue to recover a tax alleged to have been illegally collected. On demurrer to petition.

Powers & Atchison, for plaintiffs.

R. D. Hill, U. S. Dist. Atty., for defendant.

EVANS, District Judge. The plaintiffs are manufacturers of tobacco, and the defendant is collector of internal revenue for the Second Kentucky district. Previous to the going into effect of the act of congress approved June 13, 1898, and commonly known as the "War Revenue Act," but after April 14, 1898, the plaintiffs paid to the United States the tax of six cents per pound upon 18,935 pounds of manufactured tobacco then in their factory, and, in due form, affixed the proper tax-paid stamps to the packages containing the same. This tobacco, while thus tax-paid and stamped, was not physically removed from the factory; and after the war revenue act went into effect the commissioner of internal revenue made an assessment against the same of six cents per pound additional tax, instead of three cents per pound, as the rate would have been had the tobacco been actually removed from the factory prior to June 14, 1898, when the act went into effect. Having paid this assessment of six cents per pound under protest, the plaintiffs have sued the collector to recover it back upon two grounds, namely: First, because, as alleged, the commissioner had no power, lawfully, to make the assessment upon the tobacco, if it had not been removed from the factory of the maker; and, second, that the rate of taxation, under the circum-

stances as they actually existed in this case, was only three cents per pound, and the assessment, if made at all, should have been limited to that figure. The defendant has demurred to the plaintiffs' petition, and it is conceded that the disposition of the demurrer will settle the legal propositions involved.

Prior to the war revenue act the tax on manufactured tobacco was six cents per pound, and the language imposing it was this:

"Upon tobacco and snuff manufactured and sold, or removed for consumption and use, there shall be levied and collected the following taxes:  *  *  * on all chewing and smoking tobacco  *  *  *  a tax of six cents per pound." Rev. St. § 3368, as amended by 26 Stat. 619.

Section 3355, Rev. St., as amended in 1879, prescribes the duties of any person who desires to become a manufacturer of tobacco, among which are that he shall file a description of his place of business, the number of presses, cutting machines, etc., and give bond not to attempt to defraud the United States of the taxes due, and "that he shall stamp, in accordance with law, all tobacco and snuff manufactured by him, before he removes any part thereof from the place of manufacture." He is also required to make sundry reports at stated periods, and to keep certain books. By section 3369, Id., it is made the duty of the commissioner of internal revenue to prepare proper tax-paid stamps, and to sell the same to manufacturers of tobacco; and by other sections all persons are forbidden, under severe penalties, to remove manufactured tobacco until the tax is paid, and the stamps duly affixed to the packages containing the tobacco. The power to make assessment is given by section 3371, as amended in 1879, in the following language:

"Sec. 3371. Whenever any manufacturer of tobacco, snuff or cigars, sells, or removes for sale or consumption, any tobacco, snuff or cigars, upon which a tax is required to be paid by stamps, without the use of the proper stamps, it shall be the duty of the commissioner of internal revenue within a period of not more than two years after such sale or removal, upon satisfactory proof, to estimate the amount of tax which has been omitted to be paid, and to make an assessment therefor, and certify the same to the collector. The tax so assessed shall be in addition to the penalties imposed by law for such sale or removal: provided, however, that no such assessment shall be made until after notice to the manufacturers of the alleged sale and removal to show cause against said assessment: and the commissioner of internal revenue shall, upon a full hearing of all the evidence, determine what assessment, if any, should be made."

It will be seen at once that this last section only authorized the commissioner to make assessments, after giving the required notice, when the manufacturer "sells, or removes for sale or consumption, any tobacco." So that the first claim of the plaintiffs is, in a measure, maintained by the contention of the defendant himself, to the effect that the mere payment of the original tax did not ipso facto remove the tobacco from the factory, within the meaning of the statutes. This may serve as a basis for the remark that each of the parties to the suit takes two positions, and that each position so taken is logically antagonistic to the other. To illustrate, the plaintiffs contend that the commissioner could not lawfully make the assessment, because the tobacco was still actually at the place where manufactured, and might lawfully remain there without paying taxes, at plaintiffs'

option, while the defendant contends that the commissioner could lawfully make the assessment, though without stating expressly any grounds for the contention, other than such as must grow out of the fact that the tobacco had been at least potentially removed from the premises by payment of the old rate of tax. On the other hand, the plaintiffs insist that, as there was at least a constructive removal, the rate is only three cents, while the defendant contends that there was no removal, and consequently that the rate is six cents.

The law, as above stated, was in force up to the time of the approval of the act of June 13, 1898, by the third section of which it was provided:

"That there shall, in lieu of the tax now imposed by law, ·be levied and collected a tax of twelve cents per pound upon all tobacco and snuff, however prepared, and sold, or removed for consumption, or sale. * * * And there shall also be assessed and collected, with the exception hereinafter in this section provided for, upon all articles enumerated in this section which were manufactured, imported and removed from factories or custom houses before the passage of this act, bearing tax stamps affixed to such articles for the payment of the taxes thereon, and canceled subsequent to April 14th, 1898, and which articles were, at the time of the passage of this act, held and intended for sale by any person, a tax equal to one half of the difference between the tax already paid on such articles at the time of the removal from the factory or custom house and the tax levied in this act upon such articles."

Construing, as we must, this clause to .embrace both imported and domestic tobacco, if in this instance it was not sold, or removed for sale or consumption, within the meaning of section 3371, or held for sale, within the meaning of the new law, we might well hesitate before saying that the assessment made by the commissioner was valid and within his power; but, the tax-paid stamps having been affixed and canceled, if the tobacco had been "removed" from the factory, or held for sale, within the meaning of the last clause of section 3 of the war revenue act, then the commissioner would have the right to make an assessment upon it for an additional tax at the rate of one-half the increase; that is to say, at the rate of three cents per pound. If not removed, then the manufacturer had the right to keep it in his factory free from taxation until he got ready to remove it. Under the law as it has always existed, manufactured tobacco may remain at the factory of the maker as long as he chooses, and not be liable for taxation or to any assessment. It only becomes liable to the tax when he desires to use it or sell it, or to remove it for consumption or sale, and the act of 1898 does not in any wise change the law in these respects. It seems to the court that the intent of the plaintiffs was sufficiently manifested when they applied for the stamps, paid the taxes on the tobacco, and affixed and canceled the stamps, and that a fair construction of the statutes requires that we should hold that this conduct of the plaintiffs was a "removal" of the tobacco for sale or use, or a holding thereof for sale, within the meaning of the act. If on June 13, 1898, the tobacco, stamped as it was, had been taken by the plaintiffs to the store of their next-door neighbor, however near by, or if any wise it had been removed off the premises of the plaintiffs, even temporarily, the rate of additional tax would be three cents, instead of six. If the most insignificant act of physical removal had actually

taken place after the tax-paid stamps, at the old rate, had been affixed and canceled, and after the plaintiffs had thus manifested their purpose with regard to the tobacco, the increase tax would have been only three cents per pound; but here, while the plaintiffs had indicated their purpose by paying the taxes and affixing and canceling the stamps, but had not accompanied this by an actual physical displacement and change of location, it is contended that six cents per pound is the proper rate of taxation, although it is probably a matter of public, current history that nearly all of the manufacturers of tobacco in the United States escaped with only three cents taxation upon unsold tobacco, by reason of some slight, though literal, removal. It seems to the court that congress meant no such injustice or inequality, but intended to provide for an increase of only three cents in all cases where the tax had been already paid at the old rate, and for an increase of six cents per pound where no tax at all had been paid. The strongest possible considerations lead to the conclusion that the statutes should be given this equitable construction. Any other would work the absurd and unjust results already alluded to, and make the plaintiffs pay an increase of six cents per pound, and their rivals, under substantially similar circumstances, only three cents. In the case of Lau Ow Bew v. U. S., 144 U. S. 59, 12 Sup. Ct. 520, 36 L. Ed. 344, the supreme court said:

"Nothing is better settled than that statutes shall receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or absurd conclusion." •

In Washington & I. R. Co. v. Coeur D'Alene R. & Nav. Co., 160 U. S., at page 101, 16 Sup. Ct., at page 239, 40 L. Ed., at page 355, the court said:

"When a court of law is construing an instrument, whether a public or a private contract, it is legitimate, if two constructions are fairly possible, to adopt that one which equity would favor."

It seems to the court, upon these general principles, that a construction should be adopted in this case which would promote the equitable result of imposing additional taxation on the same article at equal rates, instead of making one increase double as much as the other under substantially similar conditions.

But there is another reason for the general conclusion reached, which seems to leave the subject free from any doubt. Unless the tobacco had been "removed" from the factory or place of manufacture, the commissioner, under the statutes, had no jurisdiction or power to make any assessment upon it. The assessment, of itself, therefore imports a finding by that officer of the jurisdictional fact of removal; otherwise the assessment is void, for want of any legal warrant for making it. The conclusion, then, must be that the jurisdictional fact of removal was found to exist, though the judgment of the commissioner as to the rate and amount of tax assessable was erroneous. He having found that there was a removal, the law then fixed a rate of taxation per pound to be assessed against the tobacco. That rate in this instance was only half of six cents per pound, and for the sum assessed in excess of that lawful rate the assessment is unsupported by any provision of law, and must fail.

The general rule referred to is stated in many cases relating to the operations of the general land office, and is precisely as operative here. Burfenning v. Railroad Co., 163 U. S. 321, 16 Sup. Ct. 1018, 41 L. Ed. 175; McCormick v. Hayes, 159 U. S. 332, 16 Sup. Ct. 37, 40 L. Ed. 171; Heath v. Wallace, 138 U. S. 573, 11 Sup. Ct. 380, 34 L. Ed. 1063.

The same result will be reached when we approach the subject from another standpoint. If the plaintiffs are correct in their most radical contention, that the whole assessment was absolutely void, because there had been no removal, then they are entitled to recover the full amount sued for; and the tobacco will remain in their factory, partly tax-paid, until they get ready to remove it, and in fact do so, however far ahead that may be. After such removal, what would then be the rate of taxation? Evidently, three cents. It must be apparent from these considerations that congress intended that if six cents was paid after April 13, but before June 14, 1898, then that upon all such tobacco only three cents additional should be collected. While it is true that the assessment of the commissioner was without legal warrant as to the excess over six cents, and without legal warrant as to any part of the assessment if the first contention of the plaintiffs is correct, yet, as the court is of opinion that that contention is not sound, the measure of their recovery in this case must be one-half of the sum sued for. It is a general and just principle of law, applicable, no doubt, to a case like this, that, where a taxpayer insists upon relief, he should be required to settle the amount fairly due from him, whether the proper technical steps have been taken or not, before any relief is granted to him as to the remainder. State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 669, may be quoted as an authority indicative of the soundness of this general proposition. The money in this case has been paid, and the plaintiffs are seeking to recover it back. What is justly due should be retained by the government, instead of its being required to collect it again through another process.

The court is of opinion: First, that the payment of the six cents on a date between April 14 and June 14, 1898, and then affixing and canceling the stamps, in all essential respects satisfied the whole legislative intent and purpose as expressed in the word "removal"; second, that the commissioner must be considered as having found that there had been a removal; third, that for that reason, and upon that ground alone, he had jurisdiction and authority to make an assessment for taxes; but, fourth, that in making it he erroneously fixed a rate at six cents per pound, when it should have been three. It results that the demurrer to the petition must be overruled. The defendants electing not to plead further, judgment may be entered for one-half the sum sued for, which was paid under protest, and due appeal to the commissioner of internal revenue having been made, and relief denied, with interest from the time of payment, and for costs.