244 U.S. 305
 37 S.Ct. 645
 61 L.Ed. 1158
 EMMA F. DOEPEL et al., Heirs at Law of Hollen H. Fearnow, Deceased, Plffs. in Err.,
v.
LUTTIE B. JONES, Elmer Jones, and the Phoenix Mutual Life Insurance Company.
 No. 571.
 Argued May 8, 1917.
 Decided June 4, 1917.
 
 It is sought upon this writ of error to reverse a judgment which sustained the validity of a patent issued by the United States to the defendant in error, Luttie B. Jones, under the homestead laws. The controversy originated in a suit brought by the plaintiffs in error, charging that the Land Department had, without warrant of law, overruled contests which they had filed against the right of the defendant in error to take the land under the homestead law, and that therefore she held the patent for the same in trust for their benefit.
 The facts stipulated or shown by documentary evidence, as to which there is no dispute, are these: Hollen H. Fearnow, being qualified to make a homestead entry, applied in 1899 to make such entry in his own name. Before making the application he had agreed with his mother, for a promised consideration, that he would make the entry, comply with the homestead laws, and pay rent for the use of the land in the meanwhile, and that when the patent was issued it would be for her, and not for his account, and he would deed the land to her. About two years after the entry was made a marriage ceremony was performed between the applicant and Luttie B. Fearnow and they lived together as husband and wife and resided on the land. Some years later after the marriage ceremony and before final proof or patent, Lena Barnes instituted in the local land office a contest against the right of Fearnow to make the homestead entry. This contest was based upon the fact that the agreement which we have stated had been made, and upon the charge that, under the law of the United States, it absolutely disqualified him from making the entry. In December, 1903, after a hearing in the local land office the contest was sustained, the application by Fearnow was canceled, and an entry by Barnes under the homestead law was allowed. This order was taken for review to the Commissioner of the General Land Office, and in January, 1905, on the ground of an irregularity or deficiency of notice in the contest proceeding the order was reversed and the local land office was directed 'to appoint a day for the hearing of this contest, of which both parties shall have at least thirty days' notice. Upon the final determination of the case, should plaintiff be held to have established the truth of the averments of her affidavit of contest, said H. E. No. 13,690 [the Barnes entry] which is hereby suspended, will remain intact; otherwise it will be canceled and said H. E. 10,171 [the Fearnow entry] reinstated.'
 Ten months after this order the entryman, Fearnow, died, it not appearing that in the intervening time any further steps were taken concerning the reinstatement of his homestead entry, and after the elapsing of more than a year from his death the entrywoman, Barnes, dismissed her contest and relinquished her homestead entry. On the same day, November 26, 1906, Luttie B. Fearnow, as the widow of Fearnow, filed a relinquishment of his homestead entry, and on that any also made her own application to enter in her own individual right the land as a homestead, and this application was allowed. The following month the plaintiffs in error, asserting themselves to be the heirs of Hollen H. Fearnow, and as such entitled, under the law, to the benefits of his homestead entry and to complete the same, contested the application of Luttie B. Fearnow on the ground that she was not his widow and not entitled to the land as such, because she bore such a relation of consanguinity to her alleged deceased husband as to cause the pretended marriage relation between them to be incestuous under the laws of Oklahoma, where the land was situated, as well as under the laws of Kansas, where the marriage between them purported to have been celebrated. The local land office rejected the contest, following previous decisions of the Land Department holding that the question of the existence of a marriage was one for judicial cognizance, and until its nullity was declared or found by a competent court the marriage was binding on the Land Department. The Commissioner of the General Land Office, in reviewing, recited the previous facts as to the Barnes contest, the action taken upon it, the cancelation of the Fearnow homestead entry, the setting aside of the contest proceeding and the order made in it, and affirmed the action on the authorities which the local land office had relied upon. In reviewing and sustaining this action on appeal the Secretary of the Interior decided that the subject-matter of the marriage and its nullity was not primarily cognizable in the Interior Department. Independently of this, however, his action was placed, in addition, on distinct and different grounds, as follows:
 'But, independent of this, contestants have presented no grounds upon which their contest can be sustained. They do not allege a priority of right to make entry, or that the entryman has not complied with the law. Their claim rests upon their relationship to Hollen H. Fearnow, and if they have any right whatever by virtue of their heirship to Hollen H. Fearnow it is a right to perfect his entry, not to make entry in their own right. To avail themselves of this right it would be necessary to reinstate that entry and to show that it was improperly canceled, not by reason of any technical objection in the procedure, but upon its merits. Furthermore, their delay in not presenting their claim, even if valid, is a sufficient reason for rejecting their application to contest this entry.'
 The consequence was to definitely reject the contest and affirm the right to enter of Luttie B. Jones, she having in the meantime remarried, and, on the making of final proof and compliance with the legal requirements a patent for the land to her issued in March, 1909. This suit, as we have said, was then begun for the purpose previously stated, the basis of the relief being substantially the claim which had been pressed in the controversy in the Department.
 Messrs. Samuel Herrick, Milton Brown, L. A. Maris, and Cody Fowler for plaintiffs in error.
 Messrs. J. F. King, W. P. Hackney, and L. D. Moore for defendants in error.
 Statement by Mr. Chief Justice White:
 Mr. Chief Justice White, after making the foregoing statement, delivered the opinion of the court:
 
 
 1
 It cannot be seriously disputed that if the agreement was made by Fearnow, the original applicant, that he would make the homestead entry not for himself, but for the benefit of another, would, during the time that he was apparently taking the steps to complete the entry, pay rent for the land to such other person, and when the patent was issued deed the land to such person, such agreement caused that entry to be absolutely void for repugnancy to § 24 of the Act of Congress of May 2, 1890 (26 Stat. at L. 81, chap. 182, Comp. Stat. 1916, § 5025). But as it was expressly stipulated that the facts as to such agreement were true, it must follow necessarily that the entryman derived no right from his entry and transmitted none to his heirs, and vested them with no right after his death to complete that which was not susceptible of being completed.
 
 
 2
 Moreover, as it is not disputable that the Land Department in its final ruling against the contestants placed its action upon the prior cancelation of the homestead entry because of the particular agreement referred to which was the basis of the Barnes contest, it must necessarily result that there is an absence of the essential foundation upon which alone the asserted rights of the plaintiffs in error could possibly rest. But, putting this latter view aside, we are of opinion that the court below was clearly right in holding that, as the facts were admitted which absolutely destroyed the effect of the original Fearnow homestead entry, and therefore caused it to be impossible for that entry to be the generating source of rights in favor of the plaintiffs in error, no equitable rights arose in their favor growing out of the cancelation of that entry and the issue of the patent to the defendant in error. It seems superfluous to reason to demonstrate that no equitable right to hold the patentee as a trustee could possibly arise in favor of the plaintiffs in error since the application to enter upon which they rely was in legal contemplation nonexistent, and hence could afford no basis for equitable rights of any character.
 
 
 3
 Affirmed.