## No. 9103.

### ANDERSON v. WOODWARD.

1. PUBLIC LANDS—*Conflicting Entries—Jurisdiction to Adjust*, is vested exclusively in the land department. The courts are without authority in the premises.

2. ENTRYMAN—*Abandonment of Right.* An application to enter particular lands under the Desert Land Act was denied by the Land Department. The applicant took no possession, made no improvement, and for twelve years did no other act towards compliance with the statute. Held he had abandoned his rights.

3. *Patent—Cancellation Of—Jurisdiction.* Where the Secretary of the Interior determines the controversy between claimants for original entry of public lands, his determination, (there being no suggestion of fraud on the part of the successful entryman, or failure on his part to comply with the statute controlling his entry), is final. The courts have no power to review the action of the secretary, and cancel the patent for alleged errors on his part.

*Error to Morgan District Court, Hon. H. S. Class, Judge.*

Messrs. McCONLEY & McCONLEY, for plaintiff in error.

Messrs. MUNSON, KEATING & MUNSON, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

THIS is an action by the plaintiff in error brought in the County Court of Morgan county, to cancel a government patent to a quarter section of land, obtained by the defendant Woodward, under the homestead laws of the United

States. A demurrer to the complaint was sustained by the County Court, and the plaintiff electing to stand on his complaint, the action was dismissed.

The grounds of the demurrer were, (a) that the County Court was without jurisdiction of the subject matter, and, (b) that the court was without jurisdiction to determine the action because of the amount involved.

A writ of error issued from this court to the County Court and upon review by this court the judgment of the County Court was reversed. *Anderson v. Woodward,* 57 Colo. 53. Thereafter the County Court overruled the demurrer, and the defendant answered generally. The cause was then tried in the County Court and judgment rendered in favor of the plaintiff. The cause was appealed to the District Court where trial was had *de novo,* and judgment rendered on the merits in favor of the defendant. This judgment is now before us for review.

There is no dispute as to the material facts which are in substance; that the tract of land was vacant government land, subject to entry under the homestead laws of the United States, and in the matter of which the Interior Department had exclusive control; that on the 8th day of August, 1898, one George Raugh entered the tract as a government homestead, and in September, 1903, made final homestead proof, and received his final Receiver's Receipt therefor, which in due course and in the absence of fraud would have entitled him to a government patent. But before the issuance of patent and upon investigation, the land department acting in the course of its regular procedure, instituted a proceeding before the local land office for the cancellation of the final Receiver's Receipt, theretofor issued to Raugh, whereupon Raugh was notified to appear and show cause why his entry should not be cancelled. Upon the application of Raugh, May 21st, 1907, was set for such hearing, but this date was later vacated upon the application of the special agent of the Department.

Upon April 24, 1907, and before another date had been

fixed for the hearing, the defendant Woodward filed his application to contest the entry of Raugh. This application, by reason of the pendancy of the government proceeding, was without the jurisdiction of the local office, and under the rules of the Department, was transmitted to the Commissioner of the General Land Office for consideration and action.

On June 17th, 1907, the commissioner allowed the filing of the contest by Woodward, which gave him the status of a contestant of the Raugh entry.

In the meantime and on June 4th, 1907, Anderson, the plaintiff herein, filed with the officers of the local land office the duly executed relinquishment of Raugh to his homestead entry, whereby Raugh relinquished all his rights to the government. At the same time Anderson filed his application to enter the land under the desert land law, which application was rejected by the local officers June 11, 1907. The local officers transmitted the Raugh relinquishment to the General Land Office. On July 7, 1907, the commissioner accepted the Raugh relinquishment and directed the local office to notify Woodward of his preference right, as a contestant, to enter the tract, and in the event he did exercise such right, then to reject the application of Anderson.

This proceeding is one authorized by Act of Congress and promulgated by General Land Office circular letter of January 25, 1904, and which allows a contestant of a land entry, a preferred right of thirty days in which to enter the land where the contested entry is cancelled.

Woodward duly entered the land as a homestead within the thirty days allowed, and has received his patent thereunder from the government, which patent is sought to be cancelled in this suit. In the meantime and on June 15th, 1910, on appeal from the action rejecting his application, the Secretary of the Interior decided that Woodward was not entitled under the circumstances to a preferred right of entry, and directed that he be notified to show cause why his homestead entry should not be cancelled.

Upon this hearing to show cause, the Secretary of the Interior reversed his former decision, and affirmed the action of the local officers in rejecting the application of Anderson, and validated the entry of Woodward.

The land involved in this case was open government land subject to disposition to qualified entrymen through the Interior Department. There is no suggestion of fraud upon the part of Woodward who obtained the government patent, nor that he did not in good faith fully comply with the homestead laws in every respect. The sole question was a controversy between two claimants for original entry, each had his hearing before the Department, and the case was finally determined by the Secretary of the Interior, the lawful and final authority in such matters.

This action in fact seeks a review of the procedure and conclusion of the Interior Department, which had exclusive jurisdiction over the subject matter, and with the sole authority to determine between the conflicting claims of entrymen. This the courts have no power or authority to do, and in such a case are wholly without jurisdiction in the premises. Otherwise there would be constant conflict between state and federal authority over matters with which the federal government alone has to do. It would produce at once a state of chaos in the disposition of the public domain, and destroy the stability of government land patents upon which all such titles rest.

It will be observed that Anderson made no entry, complied with no law in relation thereto, and therefore could not in any event be decreed to have any interest in the patent, as in trust or otherwise. His only claim is that the Secretary of the Interior denied him the right to make an original entry for the reason that a preferred right to enter the tract rested in Woodward, by virtue of his contest.

Hence, if the court had the power to do so, and if it were to cancel the patent, it could confer no right upon Anderson in and to the land. The cancellation of the patent could do no more than to cause the land to revert to the government,

subject to entry by any qualified entryman, under the rule of first in time, first in right.

The right to title to public lands by an entryman can only be acquired by compliance with the law under which title is claimed.  In this case Anderson claims only error, upon the part of the Department in refusing to permit him to make a desert land entry.  He does not assert or prove that he entered upon the land, made any improvement thereon, or did any other thing toward compliance with the desert land law.  His application was made twelve years since, and even though the secretary erred, which we have no power to determine, then Anderson by his conduct has long since abandoned any right he may have had in the premises.

The rule as to when and how a patent issued by the land department of the government may be attacked in the courts is well stated in 32 Cyc. 1040:

"A patent issued by the land department for land which is within its jurisdiction and power of disposition is not open to collateral attack for either mistake of fact or error of law on the part of the land department, and the patentee can be deprived of his rights only by direct proceedings in equity to which he must be a party and of which he must have notice.  But where the title to land had passed from the United States before the claim on which a patent is based was initiated, or where the land is reserved from sale and disposition for government purposes, or dedicated to any special purpose, or withdrawn from sale and entry as being within or subject to selection under a grant in aid of railroads or internal improvements; or is reserved by a claim under a Spanish or Mexican grant *sub-judice*, or where congress has made no provision for the disposition of such land, or the statute under which the patent was issued had been previously repealed, or the land was known to be of a character not subject to any entry such as that on which the patent is based, a patent for such land is void

on its face and may be collaterally attacked in an action at law."

This doctrine was approved in *Aspen v. Aspen T. Co.,* 6 Colo. 191, 15 Pac. 794, 16 Pac. 160, where it was said that, "The patent cannot be collaterally attacked, and its validity must be assumed."

It is the settled rule of law that:

"A patent to land, the disposition of which the land department has jurisdiction, is both the judgment of the department as a quasi-judicial tribunal and a conveyance of the legal title to the land, and hence is conclusive in a court of law, and as against all persons whose rights did not commence previous to its emanation, as to the land thereby conveyed, the qualifications of the person to whom the patent was issued, the title of the patentee, and his performance of the conditions required by the act of congress under which the patent was issued." 32 Cyc. 1038.

It was said upon this point by Mr. Justice Field in *De-Guyer v. Banning,* 167 U. S. 723, 17 Sup. Ct. 937, 43 L. Ed. 340, quoting Mr. Justice Field on *Beard v. Fedory,* 3 Wall. 492, 18 L. Ed. 88.

"It is in this effect of the patent as a record of the Government that its security and protection chiefly lie. If parties asserting interests in lands acquired since the acquisition of the country could deny and controvert this record, and compel the patentee, in every suit for his land, to establish the validity of his claim, his right to its confirmation and the correctness of the action of the tribunals and officers of the United States in the location of the same, the patent would fail to be, as it was intended it should be, an instrument of quiet and security to its possessor. The patentee would find his title recognized in one suit, and rejected in another, and if his title were maintained, he would find his land located in as many different places as the varying prejudices, interests or notions of justice of witnesses and jurymen might suggest. Every fact upon which the decree and patent rests would be open to contention. The

intruder, resting solely upon his possession, might insist that the original claim was invalid or was not properly located, and, therefore, he would not be disturbed by the patentee."

It is evident that the decision rendered in this case, 57 Colo. supra, was upon a misapprehension of the facts. It was there said:

"It has frequently been decided by the Supreme Court of the United States that patents for lands which have been previously granted, reserved from sale, or appropriated, are void, and that actions may be maintained to annul such patents. *Morton v. Nebraska*, 21 Wall. 660, 22 L. Ed. 639; *Burfenning v. Chicago, St. P. M. & O. R. Co.*, 163 U. S. 321, 41 L. Ed. 175, 16 Sup. Ct. R. 1018."

This is a correct statement of the law, as will appear from the statement of the rule above quoted, but can have no application in this case. Here the land had not been previously granted, but on the contrary, when Woodward made his entry it was vacant government land, subject to homestead entry. The only question was as to whether or not Woodward had a preferred right to enter it, which was a question exclusively for the Land Department to determine, and solely within its jurisdiction and judgment.

The land had not been granted, and it had not been reserved from sale. It was unreserved, vacant government land, within the jurisdiction and power of the Interior Department, and subject to entry under the homestead law.

The cases cited by the court clearly illustrate this exception to the general rule of finality of Department decisions. In the case of *Morton v. Nebraska, supra,* the lands involved were indisputably saline lands, and had by acts of congress been expressly reserved from settlement and private entry. Hence the land department had no authority or power to permit private entries upon them, and therefore such entries were void, and it was clearly within the jurisdiction of the courts to so determine.

In the case of *Burfenning v. Chicago, St. P. Ry. Co. supra,* the rule and its application is so plainly stated as to admit of no mistake. Speaking through Mr. Justice Brewer the court said:

"It has undoubtedly been affirmed over and over again that in the administration of the public land system of the United States, questions of fact are for the consideration and judgment of the Land Department, and that its judgment thereon is final. Whether, for instance, a certain tract is swamp land or not, saline land or not, mineral land or not, presents a question of fact not resting on record, dependent on oral testimony; and it cannot be doubted that the decision of the Land Department, one way or the other, in reference to these questions is conclusive and not open to relitigation in the courts, except in those cases of fraud, etc., which permit any determination to be reexamined. *Johnson v. Towsley,* 13 Wall. 72. 20 L. Ed, 485; *Smelting Company v. Kemp,* 104 U. S. 636, 26 L. Ed. 875; *Steel v. Smelting Company,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226; *Wright v. Roseberry,* 121 U. S. 488, 7 Sup. Ct. 985, 30 L. Ed. 1039; *Heath v. Wallace,* 138 U. S. 573, 11 Sup. Ct. 380, 34 L. Ed. 1063; *McCormick v. Hayes,* 159 U. S. 332, 16 Sup. Ct. 37, 40 L. Ed. 171.

"But it is also equally true that when by act of congress a tract of land has been reserved from homestead and preemption, or dedicated to any special purpose, proceedings in the Land Department in defiance of such reservation or dedication, although culminating in a patent transfer no title, and may be challenged in an action at law. In other words the action of the Land Department cannot override the expressed will of Congress, or convey away public lands in disregard or defiance thereof. *Smelting Co. v. Kemp,* 104 U. S. 636, 646, 26 L. Ed. 875; *Wright v. Roseberry,* 121 U. S. 488, 519, 7 Sup. Ct. 985, 30 L. Ed. 1039; *Doolan v. Carr,* 125 U. S. 618, 8 Sup. Ct. 1228, 31 L. Ed. 844; *Davis, Admr. v. Weibbold,* 139 U. S. 507, 529, 11 Sup.

Ct. 628; *Knight v. U. S. Land Assn.,* 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974."

Counsel for defendant in error, on oral argument cite *Doepel v. Jones,* 244 U. S. 306, 61 L. Ed. 1158, 37 Sup. Ct. 645, as sustaining his contention. In that case plaintiffs sought by a proceeding in equity, not to cancel the patent, but to substitute the plaintiffs' rights thereunder as being held in trust for plaintiffs. The plaintiffs were heirs of an entryman whose entry had been cancelled for fraud, and a subsequent entry and patent had been granted to defendant. It was said:

"It seems superfluous to reason to demonstrate that no equitable right to hold the patentee as a trustee could possibly arise in favor of the plaintiffs in error, since the application to enter upon which they rely was in legal contemplation nonexistent, and hence could afford no basis for equitable rights of any character."

The case clearly sustains the view we adopt. In that case the entry had been cancelled for fraud, and in this case, no entry by Anderson ever existed. That was an action in equity praying for a substitution of title under the patent. There the validity of the patent was not questioned; here it is sought to cancel the patent, because of an erroneous ruling of the land department, made in the lawful exercise of its authority, and which by all authority must be held to be final.

It is clear that the court was without jurisdiction of the subject matter of this case.

But the court assumed jurisdiction and tried the case on its merits and found against the plaintiff in error, and even in this particular we find no ground for error.

The judgment is affirmed.

Garrigues, C. J., and Denison, J. concur.